A95A1590. GIVENS v. THE STATE.
(461 SE2d 579)

BLACKBURN, Judge.

Louis Givens appeals his convictions of attempted armed robbery, possession of a firearm during the commission of a felony, possession of a firearm by a first offender probationer, and three counts of aggravated assault. The trial court directed a verdict as to a count of giving a false name to a law enforcement officer.

Viewed in a light to support the jury's verdict, the evidence

reveals that on the night of July 30, 1994, Givens was a passenger in a blue and white, "low-rider"[1] truck with a white camper shell driven by co-defendant Michael Tester. The truck "tailgated" a vehicle occupied by three women, following it for approximately two miles using high-beam headlights until the driver turned the car into a residential development and finally stopped in a driveway. The truck stopped at the entrance to a nearby driveway. By the light of a street lamp, the victim driver saw a black male wearing a dark shirt, long shorts, a bandanna across his face, and a white ball cap get out of the truck and come around some bushes. At a distance of eight to ten feet, he ordered the victim driver to get out of her car. Instead, she shifted into reverse, backed rapidly out of the driveway, and sped off down the street. As she drove away, the perpetrator fired three shots at the car. The women drove to a well-lighted supermarket parking lot and called a 911 dispatcher to report the shooting incident.

While on duty, Gwinnett County police officer Friel heard an initial radio lookout for a black male who was involved in an attempted armed robbery in which shots were fired. The radio lookout further described the alleged perpetrator as in a white, low-rider pickup. A few minutes after the lookout was transmitted by radio, a truck fitting the dispatcher's description passed Officer Friel on Jimmy Carter Boulevard less than three miles from the scene where the shots were fired with a black male in the passenger seat. Before turning on his emergency equipment, Officer Friel asked if the truck he was looking for had a camper shell on it and was advised that it did. Based on the vehicle description, its proximity to the scene, and receiving confirmation that the vehicle he sought was equipped with a white camper shell, Officer Friel stopped the truck, got the occupants out, and handcuffed them. Givens, one of two passengers, was wearing long shorts and a dark shirt. Inside the truck, in plain view, were a bandanna and an automatic weapon. While Tester and Givens were being detained, the victims were brought from the supermarket parking lot to the investigation scene. All three women immediately identified the truck, and the victim driver positively identified Givens on the basis of the bright print on the front of his T-shirt and a white ball cap.

1. Givens contends the trial court erred in failing to suppress evidence obtained as a result of the investigative stop of Tester's low-rider truck. He argues the stop was unauthorized because officers had no particularized description of the vehicle, no knowledge of its direction of travel, and no knowledge that its occupants had been involved in other criminal activity.

"Although an officer may conduct a brief investigative stop of a

---

[1] A truck that is low to the ground because the springs or frame has been cut.

vehicle, such stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Investigative stops of vehicles are analogous to *Terry*-stops, and are invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal conduct. . . . What is demanded of the police officer, as the agent of the state, is a founded suspicion, some necessary basis from which the court can determine that the detention was not arbitrary or harassing.

"Critical to the determination of the validity of a stop is whether the officer making it possessed particularized and objective reasons for suspecting the person stopped of criminal activity." (Citations and punctuation omitted.) *State v. Fowler*, 215 Ga. App. 524, 525 (451 SE2d 124) (1994).

Within minutes of the crime, Officer Friel received a radio lookout for a black male who attempted an armed robbery less than three miles away and fled in a white, low-rider truck. As the message was coming in, such a truck passed the officer on Jimmy Carter Boulevard. Once he verified with the dispatcher that the truck in question indeed had a white camper shell, he made a stop to investigate further. Given the truck's description and proximity to the crime, the officer had a well-founded, objective basis for suspecting the occupants of the truck were the subjects of the lookout.

The trial court's ruling on a motion to suppress must be viewed most favorably to uphold the trial court's decision. *Holmes v. State*, 214 Ga. App. 827 (1) (449 SE2d 172) (1994). In light of the foregoing, the police officers were authorized to stop the truck for further investigation, and the trial court correctly denied Givens' motion to suppress.

2. Givens contends the evidence was insufficient to establish that a robbery was being attempted. He argues that while the conduct was an aggravated assault, speculation by the victim or the driver of the vehicle in which he was a passenger is insufficient to warrant a conviction for attempted robbery.

Pretermitting the question as to whether the intent to commit attempted armed robbery may be inferred upon speculative testimony, upon being cross-examined, Givens stated that the intent in stopping the women was to commit armed robbery; he stated that he was wearing a white ball cap and black T-shirt with the word "Guess" printed in multiple colors on the front of it when the armed robbery was committed; although he denied having been the perpetrator, he would not deny that he was to share in any proceeds of the robbery; the victims identified the perpetrator as a black male who wore a dark T-shirt with what appeared to be a bright object on the front of it and a white baseball cap. After a review of the record, we find that

rational jurors could reasonably have found Givens guilty, beyond a reasonable doubt, of attempted armed robbery. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). Accordingly, Givens' conviction of attempted armed robbery is affirmed.

*Judgment affirmed. McMurray, P. J., and Andrews, J., concur.*

DECIDED AUGUST 25, 1995.

*David L. Whitman*, for appellant.

*Daniel J. Porter, District Attorney, Donald L. Johstono, Jr., Assistant District Attorney*, for appellee.