A02A0212. BROWN v. THE STATE.
(560 SE2d 316)

ELLINGTON, Judge.

Kim Lynn Brown appeals his conviction for driving while under the influence of alcohol, OCGA § 40-6-391 (a) (5). Finding no error, we affirm.

1. Brown contends the trial court erred in denying his motion to suppress the results of his breath alcohol tests, asserting that the officer who conducted the traffic stop lacked the requisite articulable

suspicion to make the stop. On appeal, we view the trial court's ruling on a motion to suppress in the light most favorable to uphold the trial court's decision. *Givens v. State*, 218 Ga. App. 415, 417 (1) (461 SE2d 579) (1995). When the facts are not in conflict, "this [C]ourt's responsibility in reviewing the trial court's decision on a motion to suppress is to ensure that there was a substantial basis for the decision." (Citations and punctuation omitted.) *State v. Wright*, 221 Ga. App. 202, 204 (1) (470 SE2d 916) (1996).

So viewed, the record in this case shows the following: at approximately 1:30 a.m. on April 8, 2001, a concerned citizen called 911 to report a suspected drunk driver. The caller told the dispatcher that the suspected drunk driver was driving a white Ford truck with tag number 962JDB. The caller reported that he was driving directly behind the suspected drunk driver while traveling westbound on Highway 92 and that both vehicles were approaching the intersection of Highway 5 and Highway 92. The dispatcher notified police units to be on the lookout for the truck and gave a specific description of the truck, the tag number, the direction the truck was traveling, and its location. Within two minutes, Officer Copeland of the Woodstock Police Department spotted the truck at the intersection of Highways 5 and 92. After the truck went through the intersection, Officer Copeland pulled in behind it, checked the tag number, and confirmed that it was the reported truck. The officer activated his emergency lights, but the truck did not pull over immediately. After about a quarter-mile, the officer turned on his siren and the truck pulled over.

In denying the motion to suppress, the trial court ruled that "the information received from dispatch provided sufficient articulable suspicion for the officer to stop the Defendant's vehicle. Even though it was reported by a concerned citizen, the information was specific as to the exact vehicle, including tag number, and exact location." The fact that the concerned citizen was not identified at the motions hearing does not change this conclusion.[1]

> A dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report. Even if the dispatcher's information comes from a citizen or an unidentified informant, the investigatory detention is valid, for patrolling officers are not required to question dispatchers about the source of the

---

[1] The citizen testified at trial about his observations while following Brown's truck.

information. . . . [Further, c]orroboration only solidifies the existence of an articulable suspicion.

(Footnotes omitted.) *Overand v. State*, 240 Ga. App. 682, 683 (1) (523 SE2d 610) (1999). See also *McDaniel v. State*, 227 Ga. App. 364, 366 (2) (489 SE2d 112) (1997) (dispatcher's call to look out for specified vehicle and officer's observation of vehicle fitting the description give rise to an articulable suspicion and justify stop); *State v. Wright*, 221 Ga. App. at 205 (3) (concerned citizen's call giving description and location of vehicle being driven erratically, followed by almost simultaneous observation of vehicle by police, gives articulable suspicion to justify a traffic stop); *Givens v. State*, 218 Ga. App. at 417 (1).

The evidence presented in this case supports the trial court's determination that the officer had the requisite articulable suspicion to stop Brown's truck. *State v. Wright*, 221 Ga. App. at 205 (3). Accordingly, the trial court did not err in denying Brown's motion to suppress on this basis.

2. Brown contends the results of his breath tests should have been suppressed because the State allegedly failed to reasonably accommodate his request for an independent breath test. We disagree.

OCGA § 40-6-392 (a) (3) provides that a person who undergoes a chemical test at the request of a law enforcement officer is entitled to have a qualified person of his own choosing administer an additional test. Law enforcement officers have a corresponding duty not to refuse or fail to allow an accused to exercise the right to have an independent test. If the individual requests an independent test but is unable to obtain it, the results of the state-administered test cannot be used by the state as evidence against him unless the failure to obtain the test is justified. [In determining whether the failure was justified,] the trial court must decide if, under the totality of the circumstances, the officer made a reasonable effort to accommodate the accused who seeks the independent test. Factors to be considered include, but are not limited to, the following: (1) availability of funds to pay for the requested test; (2) a protracted delay in the giving of the test if the officer complies with the request; (3) availability of police time and other resources; (4) location of the requested facility, e.g., whether the requested facility is in a different jurisdiction; and (5) opportunity and ability of accused to make arrangements personally for the testing.

(Footnotes and emphasis omitted.) *Joel v. State*, 245 Ga. App. 750, 751-753 (538 SE2d 847) (2000).

In finding the State acted reasonably under the circumstances in this case, the trial court found that the officer read to Brown a document which gave specific information about medical facilities in the area that would conduct blood tests and the cost of services at these facilities. Brown chose to have his blood drawn at North Fulton Hospital, which was in a neighboring county and was not listed on the document. Even so, the officer agreed to take Brown to this hospital. The officer asked Brown about his ability to pay for the test. Brown stated that he had a personal check, but did not have a credit card or sufficient cash to pay for the test. The officer had the dispatcher contact North Fulton Hospital to determine whether it would accept a check, but the hospital responded that it did not accept checks. The defendant did not request to be taken to any other facility for the test, nor did he request the opportunity to make arrangements to pay for the test. The trial court also found that

> [a]t all times in the video the Officer appeared accommodating and cooperative with the Defendant. There was no evidence that the Defendant was coerced or forced not to pursue his request for an independent test. There is no evidence to suggest that the officer would not have continued to accommodate any request made by the Defendant to obtain an independent test. To the contrary, there is evidence in the video testimony of the Defendant praising the officer for his help and cooperation.

The trial court concluded that the officer made reasonable efforts to accommodate Brown's request for an independent blood test and that Brown's failure to obtain the test was based on his inability to pay for the test.

The trial court's factual findings are supported by the transcript of the motions hearing and the videotape of Brown's custodial statements. We find that the trial court properly concluded the officer made reasonable efforts to accommodate Brown's request for an independent test. *Joel v. State*, 245 Ga. App. at 752-753.

*Judgment affirmed. Smith, P. J., and Eldridge, J., concur.*

DECIDED FEBRUARY 14, 2002.

*Richard A. Jones*, for appellant.

*G. Channing Ruskell, Solicitor-General, Anthony B. Williams, Assistant Solicitor-General*, for appellee.