## S03A0162. THE STATE v. LANGLANDS.
### (583 SE2d 18)

HUNSTEIN, Justice.

Steve Christopher Langlands was charged in a five-count indictment with (1) murder, (2) felony murder, (3) aggravated assault, (4) possession of a firearm during the commission of a felony and (5) possession of a firearm by a convicted felon arising out of the shooting death of Anthony Pelaez. The State appeals from the trial court's grant of Langlands' motion to suppress his custodial statement to police and also the sustaining of Langlands' demurrer to Counts 2 and 5 of the indictment. Finding no error in the trial court's rulings, we affirm.

1. The State contends the trial court erred by granting Langlands' motion to suppress. On review, this Court will uphold a trial court's findings as to disputed facts in a motion to suppress unless clearly erroneous, whereas the trial court's application of the law to undisputed facts is subject to de novo appellate review. *State v. Ray,* 272 Ga. 450 (2) (531 SE2d 705) (2000). At the hearing on the motion, Investigator Tim Jarrell testified that he questioned Langlands after his arrest. Jarrell read Langlands his *Miranda* rights and understood from Langlands' response that he was invoking his right to counsel. Although the investigator ceased questioning Langlands about the criminal case, he nevertheless repeatedly questioned Langlands about his attorney[1] and stressed that once Langlands obtained counsel, Jarrell "really needed" to talk to Langlands because he "really needed to know his side of the story." Then, as Jarrell started to leave, Langlands said he would talk to the investigator without an attorney.

The trial court, after reviewing the audiotape of the interview and hearing Jarrell's testimony, found that despite Langlands' invo-

---

[1] The officer asked Langlands, inter alia, if Langlands wanted him to call the attorney, needed a public defender, needed an application for a public defender or wanted Jarrell to call the public defender's office.

cation of his right to counsel, the investigator encouraged him to speak and thus, under the totality of the circumstances, Langlands did not voluntarily initiate further talk with Jarrell. The trial court's conclusion that Langlands did not validly waive his right to counsel was not clearly erroneous. Accordingly, the grant of the motion to suppress is affirmed. See generally *State v. Ray*, supra.

2. The State also contends the trial court erred by sustaining Langlands' demurrer to two counts of the indictment. The evidence established that in 1985 when Langlands was 16 years old, he was convicted in Pennsylvania of involuntary manslaughter. Under Pennsylvania law, involuntary manslaughter is a first-degree misdemeanor, 18 Pa.C.S.A. § 2504, that carries a maximum five-year sentence of imprisonment. 18 Pa.C.S.A. § 1104. In Langlands' Stephens County indictment arising out of the shooting of Pelaez, the State used the Pennsylvania involuntary manslaughter conviction as one of two specified predicate felony offenses for possession of a firearm by a convicted felon (Count 5).[2] That same offense, possession of a firearm by a convicted felon based on the Pennsylvania involuntary manslaughter conviction, was also set forth as one of two felonies underlying the felony murder count (Count 2).[3]

Langlands demurred to the State's use of the Pennsylvania involuntary manslaughter misdemeanor conviction as a predicate felony conviction in his indictment and asserted that OCGA § 16-11-131 (possession of a firearm by a convicted felon) was unconstitutional. The definitions for that Code section are set forth in OCGA § 16-11-131 (a). "Felony" is defined as "any offense punishable by imprisonment for a term of one year or more and includes conviction by a court-martial under the Uniform Code of Military Justice for an offense which would constitute a felony under the laws of the United States." Id. at (1). Subsection (b), in pertinent part, makes it a felony for any person to receive, possess or transport any firearm when that person "has been convicted of a felony by a court of this state or any other state; by a court of the United States . . . ; or by a court of any foreign nation." The State argued that because Langlands' Pennsylvania conviction was punishable by imprisonment for more than one year, it qualified as a "felony" under OCGA § 16-11-131 (a) (1). Langlands argued that the statute fails to give notice that a person with a misdemeanor conviction in Pennsylvania could be considered a convicted felon in Georgia and that, by giving greater effect to his misdemeanor conviction than it would receive in Pennsylvania, the

---

[2] The indictment also set forth Langlands' felony conviction in Pennsylvania for receiving stolen property.

[3] The other underlying felony for Count 2 was Langlands' conviction for aggravated assault.

State's application of OCGA § 16-11-131 violated the Full Faith and Credit Clause. Constitution of the United States, Art. IV, § 1.

While out-of-state convictions must be given the same faith and credit to which they are entitled in the state where they are rendered, see *Greer v. State*, 201 Ga. App. 775 (2) (412 SE2d 843) (1991); see generally *Branch Bank of Alabama v. Kirkpatrick*, 5 Ga. 34, 38-39 (1848), but see Restatement, Second, Conflict of Laws § 103, the trial court correctly recognized that the Full Faith and Credit Clause does not prevent Georgia from according felony status in Georgia to out-of-state misdemeanor criminal convictions in those instances where the Georgia statute provides sufficient notice to persons of ordinary intelligence that any out-of-state misdemeanor convictions that meet the specified statutory requirements will be deemed the equivalent of felony convictions in Georgia.[4] Thus, habitual felon punishment in Georgia encompasses any person "convicted of a felony offense in this state *or having been convicted under the laws of any other state* or of the United States *of a crime which if committed within this state would be a felony and sentenced to confinement in a penal institution*." (Emphasis supplied.) OCGA § 17-10-7. See also Galt, The Use of Out-of-State Convictions for Enhancing Sentences of Repeat Offenders, 57 Alb. L. Rev. 1133 (1994) (discussing habitual felon statutes across the country).

Our review of our sister states reveals that most provide notice to persons that out-of-state convictions will be considered under their penal code provisions for possession of a weapon by a convicted felon. See, e.g., Ala. Code § 13A-11-72 (a) ("person who has been convicted

---

[4] We take notice of the holding in *New Mexico v. Edmondson*, 818 P2d 855, 860-861 (N.M. App. 1991), in which it was stated:

It is not at all clear that the Full Faith and Credit Clause applies to criminal matters. See *Nelson v. George*, 399 U.S. 224 (1970) (state not required to enforce penal judgment of sister state); *Huntington v. Attrill*, 146 U.S. 657 (1892) (suggesting that state cannot enforce penal judgment of another state, including one for a monetary penalty). But see *Farmland Dairies v. Barber*, [478 NE2d 1314 (N.Y. 1985)] (full faith and credit requires New York to abide by New Jersey criminal judgment stating that it could not be used in civil proceeding). Even assuming that it does, we believe that it would rarely, if ever, compel one state to be governed by the law of a second state regarding the punishment that can be imposed for a crime committed within the first state's boundaries. As the United States Supreme Court said in a somewhat differen[t] context, "Full faith and credit does not automatically compel a forum state to subordinate its own statutory policy to a conflicting public act of another state; rather, it is for this Court to choose in each case between the competing public policies involved." *Hughes v. Fetter*, 341 U.S. 609, 611 (1951) (Wisconsin must recognize Illinois cause of action for wrongful death).

A state cannot express its public policy more strongly than through its penal code. When a state defines conduct as criminal and sets the punishment for the offender, it is conveying in the clearest possible terms its view of public policy. Full faith and credit ordinarily should not require a state to abandon such fundamental policy in favor of the public policy of another jurisdiction.

in this state or elsewhere"); Ariz. Rev. Stat. § 13-3101 (A) (6) (b) (defining "prohibited possessor" of weapon as person who "has been convicted within or without this state"); 720 ILCS 5/24-1.1 (statute applies to convictions "under the laws of this State or any other jurisdiction"); N.C.G.S.A. § 14-415.1 (b) (3) (addressing violations of criminal laws "of other states or of the United States . . . that are substantially similar to crimes covered in [another subsection] which are punishable where committed by imprisonment for a term exceeding one year"); S.C. Code Ann. § 16-23-30 (a) (applying statute to persons "convicted of a crime of violence [as defined] in any court of the United States, the several states . . ."). Pennsylvania, where Langlands was convicted of misdemeanor involuntary manslaughter, also recognizes the offense of possession of a firearm where a person is convicted of certain enumerated crimes "within or without this Commonwealth, regardless of the length of sentence," 18 Pa.C.S.A. § 6105 (a) (1), and specifically includes "[a]ny offense equivalent [to the enumerated] offenses under the statutes of any other state." Id. at (b).

However, in light of the language in OCGA § 16-11-131, we must agree with the trial court that Georgia's statute criminalizing possession of a firearm by a convicted felon fails to provide sufficient notice to persons with out-of-state misdemeanor convictions that their convictions may serve as predicate felony offenses for purposes of indictment and conviction in Georgia under OCGA § 16-11-131.

> Criminal statutes are construed strictly against the State, they must be read according to the natural and obvious import of their language, and their operation should not be limited or extended by application of subtle and forced interpretations. [Cit.]

*Foster v. State*, 273 Ga. 555-556 (1) (544 SE2d 153) (2001). Where the language in a criminal statute is ambiguous, it must be construed in favor of the defendant. *State v. Mills*, 268 Ga. 873, 875 (495 SE2d 1) (1998). Although the language in OCGA § 16-11-131 (b) clearly expresses the legislature's intent to make the possession of firearms by a person "convicted of a felony by a court of this state or any other state" a criminal offense in Georgia, the language defining "felony" in subsection (a) lacks comparable clarity. While subsection (a) expressly includes certain military convictions, it is silent in regard to offenses committed in other jurisdictions. This silence creates an ambiguity, in that a person of ordinary intelligence could fail to appreciate that the definition was meant to look past the treatment given a criminal offense by an out-of-state jurisdiction and encompass within the ambit of OCGA § 16-11-131 any offense with a maximum sentence exceeding 12 months, even those denominated "mis-

demeanor" by the rendering jurisdiction. Accord *Arizona v. Decker*, 833 P2d 704 (Ariz. 1992) (statutory language determines whether out-of-state conviction may be used to enhance sentencing).

> [T]he principle that due process requires that criminal statutes give sufficient warning to enable individuals to conform their conduct to avoid that which is forbidden is one of the great bulwarks of constitutional liberty. This Court and the United States Supreme Court have consistently equated the "sufficient warning" of prohibited conduct required of criminal statutes to the provision of "fair notice" that by engaging in such conduct, one will be held criminally responsible. . . . [T]he Due Process Clause requires that the law give a person of ordinary intelligence fair warning that her specific contemplated conduct is forbidden, so that she may conduct herself accordingly. All persons are entitled to be informed as to what the State commands or forbids.

(Punctuation and footnotes omitted.) *Hall v. State*, 268 Ga. 89, 92 (485 SE2d 755) (1997). See generally *Terry v. Mays*, 161 Ga. App. 328 (291 SE2d 44) (1982) (the requirement of the full faith and credit clause is aided by the due process provision of the Constitution).

For the reasons set forth above, the inclusion of the Pennsylvania misdemeanor conviction under Counts 2 and 5 of Langlands' indictment was error. Accordingly, because a criminal defendant is entitled to an indictment perfect in form as well as substance, see *State v. Eubanks*, 239 Ga. 483 (238 SE2d 38) (1977), we affirm the trial court's grant of Langlands' demurrer to the indictment.

*Judgment affirmed. All the Justices concur.*

DECIDED JUNE 30, 2003.

*Michael H. Crawford, District Attorney*, for appellant.

*King & Spalding, Courtland L. Reichman, Amy L. Madigan, William E. Hoffman, Jr., Drew W. Powell*, for appellee.