## A04A0674. THE STATE v. HARDEN.
### (599 SE2d 329)

MIKELL, Judge.

The state appeals the order granting Robert M. Harden's motion to suppress in his prosecution for driving with an unlawful alcohol concentration, driving under the influence of alcohol to the extent that it was less safe for him to drive, and possession of an open container of alcohol while driving. We reverse because a reasonable, articulable suspicion existed to justify a *Terry*[1] stop.

"On review, this Court will uphold a trial court's findings as to disputed facts in a motion to suppress unless clearly erroneous, whereas the trial court's application of the law to undisputed facts is subject to de novo appellate review."[2] "The inquiry is whether the officer had reasonable grounds, based on specific and articulable facts, for making the stop."[3]

In this regard, sheriff's deputy Russell Rungruang testified at the hearing on Harden's motion to suppress that on January 21, 2003, at approximately 10:30 a.m., a call came over his radio to be on the lookout for an intoxicated person driving away from the Regions Bank at the corner of Spring Street and EE Butler in Gainesville. The dispatcher described the person as a white male wearing a white ball cap and stated that he was driving a white Ford van out of the bank's upper parking deck. Deputy Rungruang testified that he observed a white van leaving the bank as he was turning onto EE Butler from Jesse Jewell and that the driver matched the description. Deputy

---

[1] *Terry v. Ohio,* 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[2] (Citation omitted.) *State v. Langlands,* 276 Ga. 721 (1) (583 SE2d 18) (2003).

[3] (Citation omitted.) *Hudson v. State,* 253 Ga. App. 210 (558 SE2d 420) (2001).

Rungruang followed the white van for two blocks and pulled it over after ascertaining from the dispatcher that the police department wanted him to stop the vehicle.

On cross-examination, Deputy Rungruang testified that he saw the subject of the lookout as soon as the description was given on the radio. The deputy was able to observe the vehicle exit the top of the parking deck, and he also was able to see that the driver was male and wearing a ball cap. The deputy saw no other white vans in the parking lot.

The trial court granted the motion to suppress because the deputy testified on cross-examination that he did not observe Harden commit any traffic offenses and that he would have stopped any white van leaving the bank if it matched the dispatcher's description. Based on *Vansant v. State*,[4] the trial court held that the deputy lacked a particularized basis for suspecting the driver of the white van of criminal activity.

The state argues that the trial court's ruling is clearly erroneous, and we agree. In *Vansant*, the only information given to police was that a white van had been involved in a hit and run accident. The van was stopped on a major thoroughfare about a mile from the accident.[5] The officer had not been given a particularized description of the van and was not told in which direction the van was driving when it left the scene.[6] The court reasoned that, under the totality of the circumstances, the officer's lack of specific information resulted in an unreasonable government intrusion.[7]

The case at bar is distinguishable from *Vansant* because the deputy had more than a general tip to be on the lookout for a white van. The deputy's undisputed testimony shows that he knew the suspect's gender, race, and type of cap that he was wearing. Moreover, the deputy observed the vehicle departing from the location from which the report was given. Under these circumstances, we conclude that the deputy had a reasonable, articulable suspicion to justify an investigative traffic stop.[8]

Finally, we conclude that the trial court erred in ruling that the deputy's failure to observe Harden commit any traffic offenses

---

[4] 264 Ga. 319 (443 SE2d 474) (1994).

[5] Id.

[6] Id. at 321 (2).

[7] Id.

[8] See *Thomason v. State*, 268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997) (officer knew driver's gender and race, and color, manufacturer, model, and model year of the car); *Shorter v. State*, 239 Ga. App. 625, 626 (1) (521 SE2d 684) (1999) ("officer was looking for a blue Cadillac with four black men").

warranted a finding that the deputy lacked articulable suspicion of criminal activity.[9]

> A dispatcher who reports a crime at a specified location gives police an articulable suspicion to investigate and detain individuals at the scene, particularly where police observations on arriving at the scene corroborate the dispatcher's report. Even if the dispatcher's information comes from a citizen or an unidentified informant, the investigatory detention is valid, for patrolling officers are not required to question dispatchers about the source of the information. Further, corroboration only solidifies the existence of an articulable suspicion.[10]

In the case sub judice, the deputy spotted the vehicle and driver matching the description given by the dispatcher as soon as the dispatcher transmitted the lookout call. Moreover, the deputy observed the vehicle and driver leaving the precise location where a tipster said the intoxicated person would be driving. The deputy's corroboration solidified the existence of an articulable suspicion, and he "was not required to . . . wait until he actually observed [Harden] committing a crime."[11]

*Judgment reversed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED MAY 12, 2004.

*Jerry Rylee, Solicitor-General, Michelle T. Rohan, Assistant Solicitor-General,* for appellant.
*Hulsey, Oliver & Mahar, Jason A. Dean,* for appellee.

---

[9] See *State v. Gomez*, 266 Ga. App. 423, 425-426 (3) (597 SE2d 509) (2004).
[10] Id., citing *Brown v. State*, 253 Ga. App. 741, 742-743 (1) (560 SE2d 316) (2002).
[11] (Citations omitted.) *Gomez,* supra.