## A04A0960. LAMB v. THE STATE.
### (604 SE2d 207)

MIKELL, Judge.

Following a bench trial, Thomas Edward Lamb III, was convicted of two counts of driving under the influence of alcohol.[1] At the conclusion of the trial, the court denied Lamb's motion to suppress evidence seized as a result of the stop of his vehicle, finding that the arresting officer had a reasonable and articulable suspicion to initiate the stop. On appeal, Lamb asserts that the trial court erred in denying his motion to suppress. We affirm.

> When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support [them]. Second, the trial court's decision with regard to the questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.[2]

Viewed in its proper light, the evidence shows that on May 8, 2003, Lamb was sitting at the bar in a Hooters restaurant. Michele Dellajacano, the bartender, testified that she noticed Lamb at her bar when she returned from the restroom. She testified that he had been served a 32-ounce "Big Daddy" beer by her co-worker, that his eyes looked bloodshot, and that he appeared to have been drinking before

---

[1] We note that the state has failed to file a brief, in violation of Court of Appeals Rule 13. The state's representative may be cited for contempt for such violation.

[2] (Citation omitted.) *Edgerton v. State*, 237 Ga. App. 786, 787 (516 SE2d 830) (1999).

arriving at the bar. When he finished the "Big Daddy" beer, she poured him another one, only to pour it out upon noticing his intoxicated condition. She further testified that she had been trained in "bar code" class to observe her patrons' level of intoxication.

According to Dellajacano, when she poured out the second beer, Lamb became angry, demanded his tab, refused to allow her to call him a cab, and left the bar, swaying as he walked to the door. Dellajacano testified that after he left, she called 911 "[b]ecause he left [her] bar intoxicated." According to the trial court's order,[3] the caller stated on the tapes that she worked at Hooters on Tara Boulevard, that a man who was too intoxicated to drive was leaving the restaurant, and that he would not let her call him a cab. The caller also indicated that she was unsure about the color of the patron's car but that it was "goldish" or "brownish" with drive-out tags. The operator asked her to call back to 911 when she saw the man exit. The bartender placed the second call at the same time Lamb was stopped by the police and told the dispatcher, "they got him," confirming that the car she had observed was the same car that was stopped.

Lamb was stopped by Clayton County Police Officer William Lee, who testified that he was on patrol at approximately 7:30 p.m. driving on Tara Boulevard when he received a BOLO (be-on-the-lookout) for a white male in a "newer Lincoln with a drive-out tag" leaving Hooters on Tara Boulevard. Dispatch advised the officer that the male was possibly intoxicated. Officer Lee testified that almost immediately after receiving the BOLO, he noticed a car matching the description exiting Hooters's parking lot. He also saw that the driver was a white male. After observing the car cross three lanes of traffic in rapid succession, Officer Lee initiated the stop. Officer Lee explained to Lamb that he had stopped him because of the BOLO, the drive-out tag, and the alleged traffic infraction.

In denying the motion to suppress, the trial court found that the information possessed by the officer, as shown by the bartender's testimony, the 911 tapes, and the BOLO created a reasonable and articulable suspicion of criminal activity sufficient to justify an investigatory stop. We agree.

> Momentary detention and questioning are permissible if based upon specific and articulable facts, which, taken together with rational inferences from those facts, justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its

---

[3] The 911 tapes have not been included in the record on appeal.

occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing.[4]

In this case, at the time he made the stop, Officer Lee had an objective basis for suspecting that Lamb was engaged in criminal activity based on the information provided by the bartender to the 911 dispatcher.[5] "[H]ere there was no anonymous 'tip,' but rather a complaint from an identified individual, the [bartender], who had observed appell[ant]'s behavior and reported it, giving a detailed description of appell[ant] and his car."[6] The radio report that an employee of Hooters had observed an intoxicated person driving away from the bar in a described vehicle provided Officer Lee with a reasonable basis for stopping Lamb's car.

In addition, Lamb's argument that the vague and inaccurate description of the color of the car renders the stop illegal lacks merit when viewed in light of the immediacy of the stop itself. The officer testified that after receiving the BOLO, he immediately made a U-turn and saw Lamb's car leaving Hooters's parking lot. The dispatcher described the car as "a newer Lincoln" that was exiting the lot. This information coupled with the officer's observation of the vehicle at the reported location was sufficient to give him reasonable and articulable suspicion that a newer Lincoln leaving that same parking lot, as was described by the Hooters's bartender, was engaged in criminal activity.[7] Moreover, Lamb's contention that Lee relied on his own opinions or intuitions in deciding to stop Lamb is belied by his testimony that he immediately saw Lamb's car after receiving the BOLO and stopped it within a minute of that observation.[8]

---

[4] (Citation and punctuation omitted.) *State v. McFarland*, 201 Ga. App. 495, 496 (411 SE2d 314) (1991).

[5] Id. Compare *Duke v. State*, 257 Ga. App. 609 (571 SE2d 414) (2002) (the only evidence presented at the suppression hearing was the officer's testimony that the dispatcher had given a description of the vehicle and that the police suspected the driver of being involved in a drug transaction).

[6] *McFarland*, supra.

[7] See *McNair v. State*, 267 Ga. App. 872 (600 SE2d 830) (2004) (officers were justified in stopping car that matched description in the BOLO coming from the area of the crime scene); *State v. Harden*, 267 Ga. App. 381 (599 SE2d 329) (2004) (deputy spotted suspect vehicle as soon as dispatcher transmitted BOLO).

[8] Compare *Slocum v. State*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004) ("general suspicion or a mere hunch is not sufficient to support an investigative stop"); *Jorgensen v. State*, 207 Ga. App. 545, 546-547 (428 SE2d 440) (1993) ("intuition is insufficient to give rise to an articulable suspicion") (punctuation omitted).

*Vansant v. State,*[9] upon which Lamb relies to support his position that the stop was illegal, is distinguishable. Reversing the Court of Appeals, the Supreme Court held in *Vansant* that the trial court had correctly granted a motion to suppress because the officer testified that he knew only that the suspect vehicle was a white van and that he would have stopped any white van.[10] The van was stopped about a mile from the alleged crime scene. In the case sub judice, the officer knew the location and make of the car and observed it leaving the reported location before initiating the stop. Officer Lee testified that he saw Lamb's car pulling out of the parking lot "almost immediately" after he heard the BOLO. Accordingly, Lamb's contention that the officer would have stopped any Lincoln is not supported by the record, and this case is not controlled by *Vansant.*

Finally, Lamb contends that the stop was improper under *State v. Jones*[11] because it was partially based on a valid drive-out tag. This contention is meritless because the drive-out tag was an identifying feature of the vehicle as described in the BOLO. Moreover, contrary to Lamb's contention, *Jones* does not stand for the proposition that officers cannot stop vehicles with drive-out tags. Rather, in *Jones* we affirmed the trial court's ruling that an expired drive-out tag justified the initial stop. However, we also explained that "at the point the officer concluded that [the driver] was not in violation of any traffic offense, *absent a reasonable suspicion of some other criminal activity,*" he had a duty to terminate the stop.[12] In this case, as set out above, there was sufficient other information to justify the stop. Additionally, once the stop was initiated, Officer Lee smelled alcohol on Lamb's breath and thus had no duty to terminate the stop merely because his vehicle tag was valid.

*Judgment affirmed. Blackburn, P. J., and Barnes, J., concur.*

DECIDED AUGUST 6, 2004 —
RECONSIDERATION DENIED AUGUST 31, 2004 — 

*Head, Thomas, Webb & Willis, William C. Head,* for appellant.
*Keith C. Martin, Solicitor-General,* for appellee.

---

[9] 264 Ga. 319 (443 SE2d 474) (1994).
[10] Id. at 321 (2).
[11] 252 Ga. App. 404 (556 SE2d 495) (2001).
[12] (Punctuation omitted; emphasis in original.) Id. at 406 (1).