A05A2196. FAULKNER v. THE STATE.
(627 SE2d 423)

BERNES, Judge.

Following the denial of his motion to suppress, Christopher Grant Faulkner was found guilty in a bench trial of driving under the influence of alcohol ("DUI") and violating the open container law.[1] In this appeal, Faulkner contends that the stop of his vehicle and his arrest for DUI were unlawful. For the reasons set forth below, we affirm.

When reviewing a trial court's order denying a motion to suppress, we must construe the evidence in the light most favorable to upholding the trial court's findings and judgment. *Lamb v. State*, 269 Ga. App. 335 (604 SE2d 207) (2004). In addition, the trial court's determination of questions of fact and credibility must be accepted unless clearly erroneous. Id.

So viewed, the evidence shows that at approximately 1:00 a.m., May 22, 2004, Corporal J. C. Price, a Gwinnett County police officer, was working off-duty at Wild Bill's live-music club and bar when he encountered three young white males as they were leaving. The officer noticed that the three men were very loud and "obviously[ ] intoxicated" and that "all three of them were hooting and hollering and stumbling into each other." One of the young men looked directly at the officer and remarked, "[D]on't worry, officer, we're not driving. [H]is mama's coming to get us." The off-duty officer responded, "[A]ll right, guys, don't drive."

---

[14] *Gen. GMC Trucks v. Crockett*, 145 Ga. App. 503, 505 (3) (244 SE2d 78) (1978).

[1] By agreement of the parties, the trial court based its decision on the evidence adduced at the motion to suppress hearing.

Shortly thereafter, a security officer approached Corporal Price and showed him that the three males with whom he had spoken were still outside in the parking lot. As Corporal Price approached the three males from behind, they began to run. Corporal Price momentarily lost sight of the trio, but then saw them get into a black Jeep Cherokee, which sped off and jumped a curb onto Market Street, where it made a right turn toward Mall Boulevard. The officer watched the Jeep proceed up Mall Boulevard and turn left toward Pleasant Hill Road after which he broadcast a be-on-the-lookout ("BOLO") for a suspected drunk driver on his radio, stating that three white males, "obviously intoxicated," in a black Jeep Cherokee, had driven over a curb at Wild Bill's and were turning onto Mall Boulevard.

Thirty seconds after the broadcast, Officer D. J. Merchant, a Gwinnett County police officer on general patrol in the area, spotted a black Jeep Cherokee a block away from Wild Bill's at the intersection of Mall Boulevard and Pleasant Hill Road. The black Jeep Cherokee was occupied by three white males and was traveling in the direction reported in the BOLO. Officer Merchant activated his blue lights and began pursuing the vehicle. At that point, Faulkner, who was driving the vehicle, attempted to flee. He turned the Jeep into a restaurant parking lot and accelerated rapidly as he began circling the lot. Faulkner lost control of the Jeep and struck a curb, causing the Jeep to become disabled. As Officer Merchant approached the Jeep, he saw Faulkner climbing from the driver's seat into the back seat "to conceal the fact that he was driving."

Officer Merchant immediately removed Faulkner from the vehicle and placed him in handcuffs. Faulkner was "very argumentative" and claimed that he had not been driving. (Faulkner later admitted at the hearing on his motion to suppress that he had in fact been driving the Jeep.) Officer Merchant described all three of the Jeep's occupants, including Faulkner, as "wreak[ing] [sic] of alcohol."

Officer Tonelli, also with the Gwinnett County Police Department, arrived almost immediately to provide backup. Officer Tonelli had heard the radio report of a suspect, possibly drunk, leaving Wild Bill's at a high rate of speed. She recalled the dispatch as saying the officer "had tried to stop them and they had taken off from him." She testified that "[a]s soon as I made contact with [Faulkner] I could smell a strong odor of alcohol, [and] he was very argumentative." She also observed that Faulkner's speech was slurred and his face was flushed. Open alcohol containers were discovered inside the vehicle. Officer Tonelli, who was assigned the duty of transporting Faulkner, informed him that he was under arrest for DUI and obstruction and read him his implied consent rights. Faulkner refused to submit to any chemical testing of his blood or breath.

1. Faulkner contends that the stop of his vehicle was unconstitutional, arguing that the officers lacked a reasonable, articulable suspicion of criminal activity. We disagree. First, the record reflects that Corporal Price reasonably suspected that Faulkner was driving under the influence of alcohol. Corporal Price had seen the three males exit the bar in an "obviously intoxicated" state and then saw them recklessly drive away in the black Jeep Cherokee. While Corporal Price momentarily lost sight of the three males in the parking lot, we nevertheless find the circumstances sufficient to warrant the conclusion that the three males whom he observed leaving the bar were the same three males he saw drive away in the black Jeep Cherokee.[2] As Corporal Price noted, "logic" dictates such a conclusion: he was unable to locate the three males anywhere in the parking lot after the black Jeep Cherokee drove away, and no other cars left the lot during that time.

Second, the BOLO subsequently broadcast by Corporal Price provided Officer Merchant with a reasonable suspicion of criminal activity sufficient to authorize his stop of the vehicle driven by Faulkner. The BOLO provided particularized information describing the color, manufacturer and model of the vehicle, the number and race of its occupants, and its location and direction of travel. Particularized alerts issued by police officers for specifically described vehicles possibly involved in criminal activity have long served as a legitimate basis for investigatory stops. See *Thomason v. State*, 268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997); *McNair v. State*, 267 Ga. App. 872, 874 (1) (600 SE2d 830) (2004); *Shorter v. State*, 239 Ga. App. 625, 626 (1) (521 SE2d 684) (1999).

*Vansant v. State*, 264 Ga. 319 (443 SE2d 474) (1994), upon which Faulkner relies, is factually inapposite.[3] There, the officer had only a "generalized description of the suspect he was seeking and the [van] he was driving . . . [and] had no information to distinguish the van he stopped from all other white vans, such as its manufacturer, model, or model year." *Thomason*, 268 Ga. at 301 (2) (a). "In this case, unlike *Vansant*, the officer[ ] knew the make of the car reported to be involved in the crime, and [he] spotted a vehicle meeting the BOLO description [a block away from] the reported crime location only seconds after receiving the radio dispatch." *Francis v. State*, 275 Ga. App. 164, 165 (1) (620 SE2d 431) (2005); *State v. Harden*, 267 Ga. App.

---

[2] At the suppression hearing, Faulkner's witnesses, the other two occupants of the black Jeep, admitted they had been drinking at Wild Bill's prior to being stopped by the police.

[3] *United States v. Chanthasouxat*, 342 F3d 1271 (11th Cir. 2003), also cited by Faulkner, is inapposite as well. There, the Eleventh Circuit held that a "mistake of law cannot provide the objective basis for reasonable suspicion or probable cause." Id. at 1280 (IV) (A) (iii) (b). This case involves no mistake of fact or law.

381, 383 (599 SE2d 329) (2004). Although Faulkner claims that Officer Merchant did not observe "any unusual driving behavior" until after he activated his blue lights, the officer was not required to await the commission of a traffic offense in his presence before conducting an investigative stop in light of the BOLO. See *Harden*, 267 Ga. App. at 383.

Notwithstanding that fact, the State presented evidence that instead of pulling over when the patrol officer activated his blue lights, Faulkner attempted to flee, driving recklessly and speeding, stopping only because he struck a curb that disabled the Jeep. By choosing to ignore the flashing blue lights, Faulkner violated OCGA § 40-6-395 (a), "Fleeing or attempting to elude police officer." Thus, even had an investigative stop been otherwise illegal, the new criminal activity would have purged the taint. *State v. Stilley*, 261 Ga. App. 868, 871 (584 SE2d 9) (2003).[4] We do "not leave the determination of whether there is a legal basis for a traffic stop to the driver." (Punctuation and footnote omitted.) Id. "To hold otherwise [could] encourage persons to resist the police and create potentially violent and dangerous confrontations." (Punctuation and footnote omitted.) *Strickland v. State*, 265 Ga. App. 533, 539 (594 SE2d 711) (2004). The stop of Faulkner's vehicle was supported by a reasonable, articulable suspicion of criminal activity.

2. Faulkner next contends that his arrest for DUI was not supported by probable cause. Again, we disagree.

> The test of probable cause requires merely a probability — less than a certainty but more than a mere suspicion or possibility. Sufficient probable cause to conduct a DUI arrest only requires that an officer have knowledge or reasonably trustworthy information that a suspect was actually in physical control of a moving vehicle, while under the influence of alcohol to a degree which renders him incapable of driving safely.

(Footnotes omitted.) *Trotter v. State*, 256 Ga. App. 330, 331-332 (1) (568 SE2d 571) (2002). The following facts known to the arresting officers, in addition to the information supplied to them in the BOLO, supported the trial court's finding that Faulkner's arrest for DUI met the test for probable cause: (1) Faulkner attempted to elude Officer Merchant after he activated his blue lights; (2) Faulkner drove

---

[4] That Faulkner was not arrested for violating OCGA § 40-6-395 is immaterial to our analysis. The underlying validity of an investigatory stop of a vehicle does not hinge upon whether charges are brought for observed traffic offenses. See *Howard v. State*, 233 Ga. App. 861, 861-862 (505 SE2d 270) (1998).

recklessly and lost control of his vehicle; (3) Faulkner attempted to hide the fact that he had been driving; (4) Faulkner emanated a strong odor of alcohol; and (5) Faulkner's face was red and his speech was slurred. See *Shockley v. State*, 256 Ga. App. 892, 893 (1) (570 SE2d 67) (2002).

*Judgment affirmed. Smith, P. J., and Miller, J., concur.*

DECIDED FEBRUARY 21, 2006 —

Head, Thomas, Webb & Willis, *William C. Head*, for appellant.
*Gerald N. Blaney, Jr.*, Solicitor-General, *Robby A. King*, Assistant Solicitor-General, for appellee.