## A07A0169. LACY v. THE STATE.
(647 SE2d 350)

ELLINGTON, Judge.

Following a bench trial, Scott Lacy was convicted of driving under the influence of alcohol to the extent it was less safe to drive, OCGA § 40-6-391 (a) (1). He appeals, contending the trial court erred in denying his motion to suppress. Finding no error, we affirm.

The undisputed evidence showed the following relevant facts. Late in the evening of July 13, 2005, Scott Lacy called 911 and gave the phone to his wife, Tanya, who told the 911 operator that her husband, an "ex-cop," was drunk and was being disruptive. The couple argued with each other for several minutes during the call, then Lacy got into his truck and locked the doors. Mrs. Lacy unsuccessfully tried to stop him from leaving, then told the 911 operator that her husband was leaving the house in a "red 2004 Dodge pickup," was wearing a gray t-shirt, shorts, and an "Old Navy" baseball cap, and was driving toward the subdivision's exit. Based on the recording of the call, it appears that the 911 operator typed this information into the computer as Mrs. Lacy reported it and that the operator communicated with the police.

After receiving the domestic dispute call, a Cherokee County Sheriff's Department deputy drove toward the rural subdivision where the couple lived with the intention of responding to the call. While en route, however, the deputy heard the dispatcher issue an alert advising that the caller's husband had left the couple's house in a red pickup truck and "had possibly been drinking." Within three minutes of the time Mrs. Lacy reported that her husband was leaving the house, the deputy turned into the couple's subdivision with his blue lights flashing and saw a red truck coming toward him from the opposite direction. The driver of the truck, subsequently identified as Lacy, pulled to the side of the road and stopped after passing the deputy, and the deputy turned around and pulled in behind the truck. According to the deputy, before turning around, he spoke to his sergeant, who knew Lacy, and the sergeant told him to turn around and stop the truck.[1] When asked if he would have stopped any red

---

[1] The sergeant was not present at the scene before the traffic stop, but arrived at the scene almost immediately thereafter.

truck in the area, the deputy responded that he would have "if it matched the description" from the dispatcher.

Lacy was later charged with DUI, and he filed a motion to suppress the evidence obtained pursuant to the traffic stop.[2] The only witness who testified at the motion hearing was the deputy; Lacy did not testify. After hearing the deputy's testimony, listening to a recording of the 911 call, viewing a recording of the traffic stop, and considering oral argument, the trial court denied Lacy's motion to suppress. The court ruled that

> the 911 call, the time of the night, the nature of the call, the subdivision area, the specific response to a residence there, and [the deputy's testimony] that he was ordered to stop the vehicle by superior officer clears up any problems about the stop. I don't think this is just a general stop of a certain pickup truck that would require that the Court suppress anything.

Following a bench trial, Lacy was convicted of driving while under the influence to the extent it was less safe to drive.

On appeal, Lacy claims that the deputy lacked a specific, articulable suspicion of criminal activity necessary to execute the traffic stop. Lacy points to the deputy's testimony that he only remembered the dispatcher stating that Lacy was driving a "red pickup truck" and was possibly drunk.

> While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citation and punctuation omitted.) *Francis v. State*, 275 Ga. App. 164 (620 SE2d 431) (2005). In this case, the facts are undisputed. The only issue is whether the facts that were known by the deputy prior to the traffic stop were sufficient to justify the stop. See *Slocum v.*

---

[2] Lacy's motion to suppress not only challenged the legality of the traffic stop, it also challenged the admissibility of evidence obtained after the stop based on the deputy's alleged failure to advise him of his *Miranda* rights and the alleged lack of probable cause to arrest and search him. The court's rulings on these issues are not challenged on appeal.

*State*, 267 Ga. App. 337, 338 (599 SE2d 299) (2004) (the reasonableness of the officers' suspicion "must be measured by what [they] knew before they made the stop") (citation and punctuation omitted).

> Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The U. S. Supreme Court recognized the difficulty in defining the elusive concept of what cause is sufficient to authorize police to stop a person, and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has a particularized and objective basis for suspecting the particular person stopped of criminal activity.

(Citation and punctuation omitted.) *Boone v. State*, 282 Ga. App. 67, 70 (2) (637 SE2d 795) (2006).

In this case, the undisputed evidence shows that, before the deputy stopped Lacy's truck, he knew that there had been a domestic dispute in the Calousa Lake subdivision, that the man involved may have been drinking, and that the man had just left his house in a red pickup truck and was driving toward the exit to the subdivision. Within two to three minutes of being notified that Lacy had left his house, the deputy turned into the subdivision and immediately encountered a red pickup truck leaving the subdivision. Upon seeing the deputy's patrol car with its blue flashing lights, the driver of the truck pulled to the side of the road and stopped. The recording from the deputy's patrol car also shows that there were very few vehicles on the road in that area during the deputy's eight minute drive toward Lacy's house following the domestic dispute call. In fact, the deputy encountered only ten other vehicles on the road during the first six minutes, and none within the two minutes before he encountered Lacy at the entrance to the subdivision.

We conclude that, under the totality of these circumstances, the deputy had the requisite articulable suspicion to warrant the investigative stop. See *Boone v. State*, 282 Ga. App. at 70 (2) (officer had a reasonable suspicion necessary to conduct a traffic stop shortly after "hearing a recent BOLO that described the truck's color, number of occupants, road of travel, and direction of travel"); *McNair v. State*, 267 Ga. App. 872, 874 (1) (600 SE2d 830) (2004) (officer had an objective, reasonable suspicion of criminal activity to conduct a traffic stop of a car coming from the direction of the crime scene five minutes after hearing a BOLO alert when the car matched the BOLO's description of an "older model, creme-colored Chevrolet Caprice");

*Givens v. State,* 218 Ga. App. 415, 417 (1) (461 SE2d 579) (1995) (officer had sufficient basis for stopping a truck based on a BOLO alert describing a black male driving a "white, low-rider truck" when the officer spotted a truck three miles away from the scene of the crime and verified that the truck had white camper shell before conducting the stop).[3]

Accordingly, the trial court did not err in denying Lacy's motion to suppress to the extent that it was based upon an illegal traffic stop.

*Judgment affirmed. Andrews, P. J., and Adams, J., concur.*

DECIDED JUNE 4, 2007 — ▮▮▮▮▮▮▮▮▮▮▮

*Thomas J. Thomas,* for appellant.

*David L. Cannon, Jr., Solicitor-General, David M. McElyea, Assistant Solicitor-General,* for appellee.

---

[3] Cf. *Vansant v. State,* 264 Ga. 319, 321 (2) (443 SE2d 474) (1994) (officer who stopped a white van simply because he had heard a report that a white van had been involved in a hit and run, but did not know in which direction the suspected van was traveling when it left the scene, lacked a particularized basis for suspecting the driver of illegal activity); *State v. Dias,* 284 Ga. App. 10, 12 (2) (642 SE2d 925) (2007) (the evidence did not support a reasonable suspicion sufficient to warrant the traffic stop when it was based on an anonymous caller's report that "a maroonish or a brownish color either a Ford Taurus or a Tempo, or something like that, [had left] the scene [of a burglary] with a white male occupant"); *Murray v. State,* 282 Ga. App. 741, 741-743 (639 SE2d 631) (2006) (evidence should have been suppressed when the traffic stop followed a BOLO several minutes earlier alerting officers to watch for a "gold Ford pickup truck on Selfridge Road," because the officer who made the stop did not know the make or model of the truck, the direction in which the truck was traveling, or even if the truck was, in fact, moving); *Slocum v. State,* 267 Ga. App. at 338 (officers lacked reasonable suspicion to conduct the traffic stop, which was based solely upon a caller's report that she had been assaulted by a white male about a block from the traffic stop and that a dark colored sports utility vehicle had been "involved" in the incident).