A09A0895. SIMS v. THE STATE.
(683 SE2d 911)

PHIPPS, Judge.

Following a bench trial, Emily Dianne Sims was convicted of driving under the influence and of possessing an open container of an alcoholic beverage. She contends on appeal that the court erred in denying her motion to suppress evidence seized as the result of a traffic stop. Finding no merit in this claim, we affirm.

On appeal from the denial of a motion to suppress, "where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review."[1]

The transcript of the suppression hearing shows the following undisputed facts. On July 2, 2008, a police officer was dispatched to an address based upon a report that an intoxicated woman was arguing there. While en route, the officer received a BOLO ("be on the lookout") call from the dispatcher, indicating that the woman had driven away from the address in a truck. The dispatcher provided the officer a description of the woman and the truck, including the truck's license tag number. The officer went to the residential address associated with the tag number, but did not find the woman. The officer then parked at the entrance to the residential neighborhood. Subsequently, a truck arrived that matched the dispatcher's description, including the license tag number. The driver's appearance also matched the dispatcher's description. The officer stopped the truck, although he had not witnessed the driver commit a traffic violation, and spoke with the driver, Sims. The officer smelled alcohol on her breath, and she admitted that she had consumed alcohol. The officer's ensuing investigation led to Sims's arrest.

Sims asserts that the court should have suppressed the evidence obtained through the stop, because the information the dispatcher

---

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (citations omitted).

provided did not give the responding officer reasonable suspicion to make the stop. "Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion."[2] Under the totality of the circumstances, the officer must have a "particularized and objective basis for suspecting the particular person stopped of criminal activity."[3]

Sims asserts that the officer lacked the requisite suspicion to stop her, because the information that the officer received from the dispatcher came from an "informant of unknown reliability."[4] The record on appeal does not indicate the source of the dispatcher's information. But "[p]articularized alerts issued by police officers for specifically described vehicles possibly involved in criminal activity have long served as a legitimate basis for investigatory stops."[5] A dispatcher's report of a suspected intoxicated driver, containing details about the driver, the driver's vehicle, the driver's behavior, and the location where the behavior occurred, has been held to provide articulable suspicion authorizing a responding officer to detain the driver, even if the source of the report is a citizen or unidentified informant.[6] Under such circumstances, the responding officer is "not required to question the dispatcher about the source of the information or to wait until he actually observed [the driver] committing a crime."[7]

Here, the dispatcher's report provided the officer with a description of Sims and her vehicle (including its tag number). The

---

[2] Id. at 320 (2) (citations and punctuation omitted).

[3] Id. (citation and punctuation omitted).

[4] See *Easterlin v. State*, 216 Ga. App. 112, 113 (452 SE2d 801) (1995) (tip provided by informant of unknown reliability will not ordinarily create reasonable suspicion of criminal activity, unless it is sufficiently detailed to provide basis for predicting suspect's future behavior and police observation corroborates details); *VonLinsowe v. State*, 213 Ga. App. 619, 621 (1) (445 SE2d 371) (1994) (requiring anonymous tip that suspect possessed illegal drugs to be corroborated with details relating to person's future actions ordinarily not easily predicted).

[5] *Faulkner v. State*, 277 Ga. App. 702, 704 (1) (627 SE2d 423) (2006) (citations omitted); see *State v. Bingham*, 283 Ga. App. 468, 470-471 (641 SE2d 663) (2007) (description of vehicle, its location, its occupants, and its tag number, provided by police dispatcher from information received in 911 call concerning a fight, gave officer sufficient articulable suspicion to stop vehicle).

[6] See *State v. Gomez*, 266 Ga. App. 423, 425-426 (3) (597 SE2d 509) (2004) (911 call to dispatcher about suspected intoxicated driver, which included description and tag number of vehicle and direction driver was traveling, gave officer responding to BOLO requisite articulable suspicion to stop vehicle matching description); *Brown v. State*, 253 Ga. App. 741, 742-743 (1) (560 SE2d 316) (2002) (same); see also *Bingham*, supra (fact that 911 caller, who had provided detailed information about a fight, was not identified at suppression hearing did not change conclusion that officers had requisite articulable suspicion to stop vehicle matching description).

[7] *Gomez*, supra at 426 (citations omitted).

dispatcher's report further informed the officer that Sims was suspected of driving while intoxicated; it gave the location where she had been seen driving; it indicated that Sims had left that location; and it provided the address of another location (Sims's residence, according to her license tag records) where she might reasonably be found still engaged in this criminal activity. This information was sufficient to authorize the officer to stop Sims.[8]

The fact that the responding officer did not go to the first address provided by the dispatcher does not change this conclusion, as Sims asserts. Before the officer arrived at that address, he received updated information from the dispatcher that Sims had left that location. The officer had reason to suspect that he might find Sims in another location — her residential neighborhood — which the officer identified through the detailed vehicle information the dispatcher provided.[9] We conclude that, under the totality of the circumstances,[10] the officer had a reasonable suspicion that Sims was driving illegally under the influence of an intoxicant; thus, the officer was justified in making the investigative stop. Accordingly, Sims has shown no basis for reversing the trial court's order denying her motion to suppress.

*Judgment affirmed. Smith, P. J., and Bernes, J., concur.*

DECIDED AUGUST 27, 2009.

*Albert B. Wallace*, for appellant.
*Charles A. Spahos, Solicitor-General*, for appellee.

---

[8] See *Lacy v. State*, 285 Ga. App. 647, 649 (647 SE2d 350) (2007) (officer had the requisite suspicion to stop a vehicle in response to a BOLO dispatch of a domestic dispute in a subdivision, where the dispatcher indicated that the man involved may have been drinking and that he had left his house in a red pickup truck and been seen driving toward the subdivision entrance); *State v. Harden*, 267 Ga. App. 381, 382-383 (599 SE2d 329) (2004) (officer had the requisite suspicion to stop a vehicle in response to a BOLO dispatch that described the race, gender, clothing, and vehicle of a driver suspected to be intoxicated, where officer spotted vehicle several blocks away from location where report was given).

[9] Compare *Murray v. State*, 282 Ga. App. 741, 742-743 (639 SE2d 631) (2006) (officer lacked articulable suspicion to stop a vehicle at a different location than that provided by a dispatcher, because officer had not been told the vehicle was in motion or the direction it was heading, and had not been given a description of the vehicle or its driver).

[10] See *Darden v. State*, 293 Ga. App. 127, 130-131 (1) (a) (666 SE2d 559) (2008) (totality of circumstances includes objective observations, information from police reports and consideration of the modes or patterns of operation of certain kinds of lawbreakers, from which a trained officer makes inferences and deductions).