## S93G1407. VANSANT v. THE STATE.

(443 SE2d 474)

BENHAM, Presiding Justice.

Petitioner Vansant was charged with one count of driving under the influence of alcohol. His motion to suppress all evidence obtained subsequent to the stop of his vehicle was granted orally by the trial court just before trial. Although the State immediately filed a notice of appeal pursuant to OCGA § 5-7-1 (4), the trial court directed the prosecutor to proceed to trial and, upon the State's refusal to do so, entered a directed verdict of acquittal. The Court of Appeals reversed (*State v. Vansant*, 208 Ga. App. 772 (431 SE2d 708) (1993)), and we granted certiorari.

Two witnesses testified at the hearing on the motion to suppress. One witness testified that he telephoned the police from an Albany restaurant around 1:15 a.m. on March 8, 1993 after seeing petitioner, who was in an obviously intoxicated state, enter a white, new-styled General Motors van, back into a pickup truck, and drive away without stopping. The eyewitness testified that he called the police immediately after the incident, gave his name and his current location, described the incident, identified appellant by name as the alleged perpetrator, described the van by its color and manufacturer, and gave the direction in which it left the restaurant.[1]

The policeman who responded to a radio dispatch about the suspected hit-and-run testified that he knew only that the suspect vehicle was a white van. The officer testified that there were few vehicles on the road at 1:15 a.m. where he was patrolling and that he saw only one white van, approximately a mile from the scene of the reported hit-and-run, on a major thoroughfare leading from the restaurant. When the officer called for more information about the incident, he was told only that the driver was reported to be a white male named

---

[1] Although the eyewitness' motive for reporting Vansant's behavior was brought into question on cross-examination (Vansant having represented the eyewitness' ex-wife in divorce settlement enforcement actions against the eyewitness), there is no intimation in the hearing transcript that the information conveyed to the police was inaccurate, and it is uncontroverted that the police were unaware of any possible spiteful motive for the tip.

John Vansant, an individual not personally known to the officer. The officer followed the van, first with blue lights and then with siren activated, until the van stopped approximately a mile further down the road. The officer did not observe any traffic violations or damage to the vehicle before the stop. The officer determined that the driver was John Vansant and testified that it was "extremely noticeable" from initial contact that the van's driver was intoxicated. The officer acknowledged that in responding to the particular dispatch call in this case, he would have stopped any white van he had seen in the area because of the proximity to the incident location.

1. While the trial court's findings as to disputed facts in a ruling on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous (*State v. Davis*, 261 Ga. 225 (404 SE2d 100) (1991); *Conyers v. State*, 260 Ga. 506 (5) (397 SE2d 423) (1990)), where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review. See *State v. Davis*, supra at n. 1 (recognizing that the standard of appellate review may be different in a case where a trial court's finding results from an application of the law to undisputed facts); *State v. McBride*, 261 Ga. 60, 65 (401 SE2d 484) (1991) (Hunt, J., concurring specially). Accord *United States v. Forker*, 928 F2d 365 (II) (11th Cir. 1991); *United States v. Alexander*, 835 F2d 1406 (II) (11th Cir. 1988). While we recognize that a trial court's ruling frequently involves a mixed question of fact and law (*State v. McBride*, supra), such is not the case in the instant appeal. Accordingly, we will conduct a de novo review of the trial court's ruling.

2. Although an officer may conduct a brief investigative stop of a vehicle (see *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979)), such a stop must be justified by "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio*, 392 U. S. 1, 21 (88 SC 1868, 20 LE2d 889) (1968). See also *United States v. Brignoni-Ponce*, 422 U. S. 873 (95 SC 2574, 45 LE2d 607) (1975). The U. S. Supreme Court recognized the difficulty in defining "the elusive concept of what cause is sufficient to authorize police to stop a person," and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of [the Supreme Court's] Fourth Amendment jurisprudence." *Terry v. Ohio*, supra at 21, n. 18.

With these legal precepts in mind, we turn to the facts of the case before us. At the hearing on the motion to suppress, the officer who stopped petitioner Vansant testified that he had acted on information that a white van purportedly had been involved in a hit-and-run accident in a restaurant parking lot approximately a mile away. In response to his request for more detailed information, the officer was told the name of the hit-and-run suspect.[2] As he did not know the named suspect, that information played no part in the officer's decision to stop the white van driven by Vansant. The officer followed the white van for approximately one-half mile, observing no traffic violations by the driver of the white van, other than the van's failure to stop in response to the police vehicle's flashing blue lights. The officer testified he stopped the white van solely because it was a white van, and admitted that he would have stopped any white van.

It is clear from the evidence adduced at the suppression hearing that the detaining officer did not have the requisite particularized basis for suspecting the driver of this particular white van of criminal activity. He did not have a particularized description of the vehicle; he did not know the direction in which the vehicle had left the scene of the purported hit-and-run; he had not observed criminal activity on the part of the person stopped; he had no knowledge or suspicion that the vehicle had been involved in other similar criminal behavior. See 3 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (2nd ed.), p. 461, § 9.3 (d). The officer's lack of specific information resulted in an unreasonable governmental intrusion.

> "No right is held more sacred, or is more carefully guarded, by the common law, than the right of every individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law." [Cit.]

*Terry v. Ohio*, supra at 9. We conclude, as did the trial court, that the grant of petitioner's motion to suppress was appropriate.

3. We affirm the holding in Division 2 of the Court of Appeals' opinion that the trial court erred in entering a judgment of acquittal after granting the motion to suppress.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hunstein, Carley and Thompson, JJ., who dissent.*

HUNSTEIN, Justice, dissenting in part.

I respectfully dissent to Division 2 of the majority opinion. The

---

[2] The officer did not radio in the license plate of the white van he was following in order to ascertain the ownership thereof.

evidence at trial admits of several factors that came into play in the Albany police officer's decision to conduct an investigatory stop of Vansant's vehicle in order to locate a specific person. Those factors are: the particular description of the vehicle involved in the hit-and-run as a white van; the van's presence less than a mile from the restaurant minutes after the incident had been reported; the sparsity of any other vehicles in the area at 1:30 a.m. in Albany; and the van's passage along a major route leading from the scene of the alleged hit-and-run.[3] Under the facts of this case, I would hold that the police officer's stop of Vansant's vehicle did not constitute an unreasonable search and seizure under the Fourth Amendment to the U. S. Constitution or Art. I, Sec. I, Par. VIII of the Georgia Constitution. See *Cheatham v. State*, 204 Ga. App. 483 (1) (419 SE2d 920) (1992) (named individual heard gunshots in woods; officers in area 45-115 minutes later had articulable facts to stop freshly-muddied truck, the only vehicle in vicinity); *State v. McFarland*, 201 Ga. App. 495 (411 SE2d 314) (1991) (radio dispatch that attendant in service station across from officers' car reported intoxicated customer authorized stop of car matching attendant's description); *McConnell v. State*, 156 Ga. App. 612 (275 SE2d 697) (1980) (defendants' spatial and temporal proximity to scene of crime and apparent absence of others in vicinity sufficient to make a brief investigative stop). Accord *Cobb v. State*, 244 Ga. 344 (4) (260 SE2d 60) (1979) (officers told by radio about robbery committed by two black males wearing leather jackets in a greenish 1970 or 1971 Buick, at a time of night when traffic was light, had "probable cause to stop," id. at 348, a gold 1969 Buick with three black males not wearing leather jackets). Accordingly, I would affirm the opinion of the Court of Appeals.

I am authorized to state that Justice Carley and Justice Thompson join in this dissent.

DECIDED MAY 31, 1994 —
RECONSIDERATION DENIED JULY 1, 1994.

---

[3] The factors in this case represent four of the six factors Professor LaFave, in his treatise on search and seizure, has recognized as being taken into account by courts throughout the United States in making the judgment whether reasonable suspicion to conduct an investigatory detention existed. Those factors are as follows: (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation. See 3 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (2nd ed.), p. 461, § 9.3 (d).

*Vansant, Corriere, McClure & Dasher, Alfred N. Corriere, K. Alan Dasher,* for appellant.

*Britt R. Priddy, District Attorney, B. Martin First, Assistant District Attorney,* for appellee.