A06A2021. THE STATE v. DIAS.
(642 SE2d 925)

BARNES, Chief Judge.

The State appeals the grant of Michael Dias's motion to suppress. See OCGA § 5-7-1 (a) (4). The trial court granted the motion because it found that "the officer stopping Defendant's vehicle had no particularized basis for suspecting Defendant of criminal activity."

The record shows that Dias was stopped as a result of a be-on-the-lookout (BOLO) call for a maroon or brown Mercury Topaz or Ford Taurus or Ford Tempo driven by a white male wearing a baseball cap traveling east on Oakridge Drive. Dias was stopped while driving on Moultrie Road about two miles from the burglary. During a "routine pat-down" the officer discovered that Dias had less than one ounce of marijuana in his possession. Dias apparently had nothing to do with the burglary because he was not charged with burglary, and the trial court's order states that it is undisputed that Dias was not the perpetrator of the burglary and was not committing any traffic offenses at the time he was stopped.

---

The State argues that the information given was sufficient to provide a sufficient particularized basis for the stop. We disagree and affirm the trial court.

1. In Georgia

[w]hen an appellate court reviews a trial court's decision on a motion to suppress, our responsibility is to ensure that there was a substantial basis for the decision. We are guided by three principles when interpreting the trial court's determination of the facts. When considering such a motion the trial court is the trier of facts. The court hears the evidence, and when its findings are based upon conflicting evidence, they are analogous to a jury verdict and must not be disturbed by an appellate court if any evidence supports them. Also, the trial court's decisions regarding questions of fact and credibility of witnesses must be accepted unless they are clearly erroneous, and the evidence must be construed most favorably toward upholding the trial court's findings and judgment. Additionally, when the evidence is uncontroverted and no question about a witness's credibility exists, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

(Citations and punctuation omitted.) *Hobbs v. State*, 272 Ga. App. 148 (1) (611 SE2d 775) (2005).

2. Our law authorizes momentary detention and questioning if the stop is

*based upon specific and articulable facts, which, taken together with rational inferences from those facts,* justify a reasonable scope of inquiry not based on mere inclination, caprice or harassment. An authorized officer may stop an automobile and conduct a limited investigative inquiry of its occupants, without probable cause, if he has reasonable grounds for such action — a founded suspicion is all that is necessary, some basis from which the court can determine that the detention was not arbitrary or harassing. A *Terry* stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct.

(Citation and punctuation omitted; emphasis supplied.) *Buffington v. State*, 228 Ga. App. 810, 811 (492 SE2d 762) (1997). Further

> [t]he U. S. Supreme Court recognized the difficulty in defining "the elusive concept of what cause is sufficient to authorize police to stop a person," and concluded that the essence of the elusive concept was to take the totality of the circumstances into account and determine whether the detaining officer has "*a particularized and objective basis for suspecting the particular person stopped of criminal activity*." *United States v. Cortez*, 449 U. S. 411, 417-418 (101 SC 690, 66 LE2d 621) (1981). "This demand for specificity in the information upon which police action is predicated is the central teaching of (the Supreme Court's) Fourth Amendment jurisprudence." *Terry v. Ohio*, [392 U. S. 1, 21, n. 18 (88 SC 1868, 20 LE2d 889) (1968)].

(Emphasis supplied.) *Vansant v. State*, 264 Ga. 319, 320 (2) (443 SE2d 474) (1994). Even though the existence of an articulable suspicion can be based on the collective knowledge of law enforcement officials and a detaining officer is entitled to rely on information given him by fellow officers when forming a basis for articulable suspicion, *Buffington v. State*, supra, 228 Ga. App. at 811, we must agree with the trial court that the description provided was insufficient to provide a particularized and objective basis for suspecting Dias of criminal activity.

An officer with the Albany Police Department testified that the department received a call about a burglary in progress in a shopping center. According to the dispatcher the caller saw "a maroonish or a brownish color either a Ford Taurus or a Tempo, or something like that, leaving the scene with a white male occupant." On cross-examination the officer testified that they were to look for a car that the caller described as "a brownish or maroonish Mercury Topaz, Ford Taurus, they weren't real sure," that was traveling east on Oakridge from Radium and Oakridge. The county police officer who actually stopped Dias testified that he stopped "a '91 Mercury Topaz, maroon in color," on Moultrie Road because the person who called in the burglary said that they saw a vehicle that matched Dias's vehicle going east on Oakridge and Oakridge's name changes to Moultrie Road. He stopped Dias about two minutes after he received the information.

Although the State's brief contends the BOLO described the suspect as wearing a white cap and the trial court found that the suspect was described as wearing a baseball cap, neither officer who testified said that this information was in the BOLO. The only support that we have found for that contention is that during his testimony Dias stated that one officer said that he was pulled over because of the white hat he was wearing. Later, the officers asked him

where the white hat was, and it appears that no white hat was found in Dias's car. In any event, the officer testified that when he was stopped Dias was wearing a "black do rag."

The trial court found that the description of the car in the BOLO, either a maroon Mercury Topaz or a Ford Taurus, is not a particularized description because the cars are two different makes and models, that describing the driver as a white male in a baseball cap was insufficient to particularly identify a suspect, and that Dias was stopped two miles from the burglary.

Further, we note that the Ford Taurus was one of the most popular cars manufactured in this country and that from their testimony the descriptions provided to the officer were not as specific as the trial court credited to the State. The officer testified it was either a maroonish or a brownish Ford Taurus, or Ford Tempo, or Mercury Topaz, "or *something like that, the caller was not real sure.*" (Emphasis supplied.) Further, the evidence is uncontradicted that Dias was not wearing a white baseball cap.

No year or body style, information about the condition, or number of doors was provided about the suspect car and no details were provided about the driver or his dress other than his skin color and gender and perhaps he was wearing a white baseball cap. The effect of the description was that the officers should look for some sort of brown or maroon automobile manufactured by the Ford Motor Company driven by a white male who might be wearing a baseball cap. This description would cover a staggering number of vehicles and drivers in the State of Georgia.

In his treatise on Search and Seizure, Professor LaFave identified six factors to be considered when courts determine whether reasonable suspicion to conduct an investigatory detention existed:

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

4 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (4th ed.), § 9.5 (g). In considering these factors we find (1) that for the reasons stated above the description of the vehicle and the suspect were inadequate. (2) We have no idea of the size of the area in which the offender might be found because no information was provided

about the lapse of time between the crime occurring and Dias being stopped. We only know that the officer stopped Dias two minutes after he heard the BOLO, but we have no information about the time elapsed between the crime and the stop. (3) No information was provided about the number of persons about in the area. (4) The known or probable direction of the offender's flight was provided. (5) Dias was not engaged in any activity which would have otherwise authorized a traffic stop. (6) The officers had no knowledge or suspicion that the person or vehicle stopped had been involved in other criminality of the type presently under investigation. Therefore, even applying Professor LaFave's factors, we find that no reasonable suspicion existed sufficient to warrant a stop and investigatory detention of Dias.

We find that the cases the State relies upon are distinguishable from this case because the descriptions contained more detailed information about the vehicles stopped. Compare, e.g., *Thomason v. State*, 268 Ga. 298, 301-302 (2) (a) (486 SE2d 861) (1997) (the officer "knew the color of both the car and its top, the manufacturer, model, and model year of the car, and the driver's gender and race"); *Burnham v. State*, 277 Ga. App. 310, 311 (1) (626 SE2d 525) (2006) (the officer knew "the description, make and model of the car. He knew that it was suspected that Burnham would return to his house soon. And, he observed a car matching the description drive directly into the cul-de-sac and stop in front of the Burnham home."); *Hestley v. State*, 216 Ga. App. 573, 574 (1) (455 SE2d 333) (1995) (a white panel van that " 'didn't have a lot of windows,' " in the same general vicinity as reported by a concerned citizen).

Accordingly, we find that the trial court did not err in granting Dias's motion to suppress.

3. Because we have affirmed the trial court's grant of the motion to suppress, whether the pat-down of Dias's person was authorized is moot.

*Judgment affirmed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MARCH 7, 2007.

*Kenneth B. Hodges III, District Attorney, Heather H. Lanier, Assistant District Attorney*, for appellant.
*Leisa G. Terry, Larry W. Russell*, for appellee.