**FIRST DIVISION**
**ELLINGTON, C. J.,**
**PHIPPS, P. J., and DILLARD, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**September 28, 2012**

# In the Court of Appeals of Georgia

A12A1117. THE STATE v. WOLF.

PHIPPS, Presiding Judge.

The State appeals from the trial court's grant of a motion to suppress evidence obtained from a vehicle after it was stopped by the police. The trial court found that the traffic stop was illegal because it was not based on specific articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, and that the subsequent arrest was unlawful because the police lacked probable cause. Finding no error, we affirm.

When an appellate court reviews a trial court's order concerning a motion to suppress evidence, the appellate court should be guided by three principles with regard to the interpretation of the trial court's judgment of the facts. First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a

reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility . . . must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. On numerous occasions the appellate courts of this state have invoked these three principles to affirm trial court rulings that upheld the validity of seizures. These same principles of law apply equally to trial court rulings that are in favor of the defendant. . . .[1]

Construed in this light, the evidence showed that on February 3, 2011, a mail carrier reported to the police that he was on Vickers Circle and Coffee Road and observed at a residence a gray Nissan pickup truck and several black men who entered the truck and left the residence, apparently after they had seen the mail carrier. The mail carrier suspected that the men were about to break into the residence. The next day, around noon, a police officer on patrol in the area observed a "gray Nissan four-door pickup truck coming off of Vickers Circle onto Coffee Road." The officer, driving an unmarked police vehicle, followed the truck, which drove away and then circled back to Vickers Circle. The officer, who testified that he was patrolling the area because of the high number of recent burglaries, thought it

---

[1] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994) (citations and punctuation omitted).

"strange" that the truck returned to Vickers Circle. So he continued to follow the truck, and he called dispatch for backup "in reference to possible . . . burglary suspects."

The officer testified that the truck stopped on Vickers Circle and picked up a "black male [who had] come out of a yard." The truck drove away, but before it reached Coffee Road again, the officer activated the blue lights on his vehicle and initiated a stop of the truck. A second officer, who arrived just as the first officer had activated his lights, positioned his vehicle in front of the truck, effectively blocking the truck. The officers exited their vehicles with their guns drawn, they "got [the men] out of the [truck]," and they handcuffed all three men. Wolf was the front seat passenger.[2] The first officer explained to the driver that they had stopped the truck because of "numerous burglaries in the area." The first officer asked the driver why they had picked up an individual, and the driver responded that the individual was "getting directions" to a particular location. The officer testified that he did not

_____

[2] See *State v. Menezes*, 286 Ga. App. 280, 282-283 (1) (648 SE2d 741) (2007) (although generally, a passenger who asserts no possessory interest in a vehicle or the items found within has no standing to directly challenge a search of the vehicle, the passenger nevertheless has standing to contest his own illegal seizure and detention in connection with a traffic stop; and because evidence or contraband discovered in a search of the vehicle during the traffic stop may be considered the fruits of the passenger's illegal detention, the passenger may move to suppress the evidence or contraband and may thus indirectly challenge the search of the vehicle).

3

believe that "story," and instead believed the men were burglars. The officer testified, however, that the men were not under arrest at that time.

A third officer who had arrived on the scene testified that as she approached the truck to take pictures of it, the doors were open, and she observed in plain view a small baggie of what appeared to be marijuana behind the driver's side seat of the truck. That officer reported to the first officer that she had seen marijuana in the truck. The first officer testified that the men were then placed under arrest. They were later indicted for burglary.

The first officer who had followed the vehicle and had called for backup was the state's primary witness at the hearing on the motion to suppress. When asked on cross-examination whether, prior to stopping the vehicle, he knew "any other information" about the vehicle, such as a tag number, whether it had an extended cab, tinted windows, a tool box, or "any other individualized . . . characteristics," the officer replied that he did not: "Just that it was a gray Nissan pickup truck with black males in it, possibly." When asked on cross-examination whether, prior to the stop, he had seen the occupants of the vehicle violate any traffic laws or commit any illegal act, the officer replied that he had not.

1. The state contends that the first officer had an articulable suspicion to perform a traffic stop because the following facts made the officer suspicious that a burglary had been or was about to be committed: the officer was patrolling an area in which many burglaries had occurred; he observed a vehicle matching the description of and on the same road as a vehicle which had been reported as suspicious; and he observed the vehicle circle that area and pick up an individual; and all of this occurred "in the middle of the day, during the week, when few people were likely to be home."

"According to *Terry v. Ohio*,[3] police-citizen encounters are generally categorized into three tiers: consensual encounters; brief investigatory stops, which require reasonable suspicion; and arrests that must be supported by probable cause."[4]

> Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. Investigative stops of vehicles are analogous to *Terry*-stops, and are invalid if based upon only unparticularized suspicion or hunch. An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This suspicion

---

[3] 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968).

[4] *Groves v. State*, 306 Ga. App. 779, 780 (703 SE2d 371) (2010).

5

need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. . . .

In determining whether a stop was justified by reasonable suspicion, the totality of the circumstances -- the whole picture -- must be taken into account.[5]

It is clear from the evidence adduced at the suppression hearing that the officers did not have the requisite particularized basis for suspecting the occupants of this particular vehicle of criminal activity.[6] The first officer testified that he had not seen the occupants of the truck violate any traffic laws or commit any illegal acts.[7] But "[e]ven if there is no probable cause to *arrest* for a traffic or other offense, the

---

[5] *Darden v. State*, 293 Ga. App. 127, 130 (1) (a) (666 SE2d 559) (2008) (citations omitted).

[6] See *Vansant v. State*, 264 Ga. 319, 321 (2) (443 SE2d 474) (1994) (officer who stopped a white van simply because he had heard a report that a white van had been involved in a hit-and-run incident lacked a particularized basis for suspecting the driver of illegal activity; officer had not observed any criminal activity on the part of the person stopped; motion to suppress was properly granted).

[7] See *Groves*, supra at 781-782; compare *Brandt v. State*, 314 Ga. App. 343, 344-345 (723 SE2d 733) (2012) (where officers observed a truck traveling at a high rate of speed and saw the driver "momentarily lose control of the truck, weaving between lanes in the process," officers had probable cause to stop the truck for a traffic violation).

Fourth Amendment allows police to *stop* a vehicle to investigate a reasonable suspicion of criminal activity."[8]

The officer did not have a reasonable suspicion connecting Wolf to any crime. There was no testimony that any law enforcement officers had, in response to the mail carrier's report, investigated whether the vehicle was properly at the residence the day before. The fact that the first officer had no details about the occupants of that vehicle other than their race and gender and that their vehicle was the same make and color as the one he observed the next day in an area where prior burglaries had reportedly been committed did not provide the requisite particularized basis for suspecting Wolf or the other occupants of the vehicle of criminal activity, justifying a stop of the vehicle.[9] And there was no evidence that there was anything unlawful about the

---

[8] *Young v. State*, 285 Ga. App. 214, 215 (645 SE2d 690) (2007) (footnote omitted; emphasis supplied).

[9] See *Vansant*, supra; *State v. Dias*, 284 Ga. App. 10, 12 (2) (642 SE2d 925) (2007) (the evidence did not support a reasonable suspicion sufficient to warrant the traffic stop when it was based on an anonymous caller's report of "a maroonish or a brownish color either a Ford Taurus or a Tempo, or something like that, leaving the scene [of a burglary] with a white male occupant"; no year or body style, information about the condition, or number of doors was provided about the suspect car and no details were provided about the driver or his dress other than his race and gender and that he was perhaps wearing a white baseball cap); *Murray v. State*, 282 Ga. App. 741, 741-743 (639 SE2d 631) (2006) (mere fact that defendant's truck was located in the vicinity of the alleged crime did not give rise to articulable suspicion; detaining officer did not have a description of the driver, the model or year of the truck, the

circumstances under which an individual was picked up.[10] Nor was there testimony about the alleged recent burglaries in the area.[11]

The police stopped the vehicle without the reasonable suspicion necessary to justify an investigative stop, and the detention was an unreasonable intrusion under the Fourth Amendment.[12]

2. The state contends that the ensuing arrest was lawful because it was based upon probable cause, namely, that an officer saw suspected marijuana in plain view.

"A police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated

_____

license plate number, or the direction in which the truck was heading, and did not know whether the vehicle was moving).

[10] See generally *Young*, supra at 214-216 (trial court erred in failing to suppress evidence discovered as a result of a stop where the evidence showed that the only reason the officer stopped the defendant at 1:30 a.m. was because he saw him driving with a lawn mower in the car trunk near an area where there had been thefts reported; the officer, however, could not testify about any recent theft reports and admitted that he was not on the lookout for a stolen lawn mower; moreover, there was no evidence that the defendant had violated any traffic laws prior to the stop or that there was anything unlawful about him transporting a lawn mower in the trunk of a car).

[11] Id.

[12] See *Postell v. State*, 264 Ga. 249, 251 (443 SE2d 628) (1994) (detaining officers did not have a particularized and objective basis for suspecting defendant of criminal activity when they stopped him; defendant's detention was an unreasonable intrusion on his constitutionally-protected right of personal security); *Young*, supra.

the defendant's Fourth Amendment rights in the process of establishing his vantage point."[13] "The plain view doctrine permits a warrantless search and seizure if the agents are lawfully in position to obtain the view, the discovery is inadvertent, and the object viewed is immediately seen to be incriminating."[14]

The officer who located the suspected marijuana testified that she observed the contraband when she approached the vehicle to take pictures. She testified that when she approached the vehicle the doors were open and she observed in plain view the suspected contraband "behind the driver's side seat." Had the first officer not illegally stopped the vehicle and detained the occupants, however, the doors to the vehicle would not have been open and the third officer would not have seen the suspected

---

[13] *State v. O'Bryant*, 219 Ga. App. 862, 863 (467 SE2d 342) (1996) (citation and punctuation omitted); see *State v. Ealum*, 283 Ga. App. 799, 804 (643 SE2d 262) (2007); *Weeks v. State*, 206 Ga. App. 431, 433-434 (425 SE2d 421) (1992) (warrantless search and seizure not justified by plain view exception because police were not lawfully in position to obtain the view and discovery was not inadvertent; officer spotted suspected marijuana on floorboard of appellant's car while standing outside the vehicle during appellant's unlawful detention and performance of field sobriety tests); *Bobo v. State*, 153 Ga. App. 679, 679-680 (266 SE2d 247) (1980) (officer's testimony as to what he observed during an unlawful stop of the defendant's vehicle should have been excluded).

[14] *Zeeman v. State*, 249 Ga. App. 625, 628 (2) (549 SE2d 442) (2001) (punctuation and footnote omitted).

marijuana. Accordingly, the trial court did not err in granting the motion to suppress.[15]

The third officer was not in a lawful position when she viewed the interior of the vehicle; thus what she saw in "plain view" did not furnish probable cause for Wolf's arrest.[16]

3. The state contends also that the search of the vehicle was valid because it was an inventory search incident to a lawful arrest. Because the officers arrested Wolf without probable cause, the arrest was not lawful. Therefore, any evidence discovered as a result of that unlawful arrest was properly suppressed.[17]

*Judgment affirmed. Ellington, C. J., concurs. Dillard, J., concurs in the judgment.*

---

[15] *Weeks*, supra; *Bobo*, supra; cf. *Zeeman*, supra (suspected contraband was in plain view where police officer was legally in a position to see it and discovered it inadvertently after defendant had opened the door to enter his vehicle).

[16] Compare *State v. Webb*, 193 Ga. App. 2, 4-5 (2) (3) (386 SE2d 891) (1989) (the plain view doctrine supports a warrantless search, seizure, and arrest if the officers are lawfully in position to obtain the view, the discovery is inadvertent, and the object viewed is immediately seen to be incriminating).

[17] *State v. Fisher*, 293 Ga. App. 228, 232 (666 SE2d 594) (2008) (evidence supported the trial court's findings that defendants were illegally arrested; thus, the trial court properly suppressed the evidence obtained from the vehicle as a result of the arrests).

A12A1117. THE STATE v. WOLF.

DILLARD, Judge, concurring in judgment only.

I concur in judgment only because I do not agree with all that is said in the majority opinion. As such, the majority's opinion decides only the issues presented in the case *sub judice* and may not be cited as binding precedent. *See* Court of Appeals Rule 33 (a).