**FOURTH DIVISION**
**DOYLE, P. J.,**
**MCFADDEN and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 22, 2013**

# In the Court of Appeals of Georgia

A13A1051. ALLEN v. THE STATE.

MCFADDEN, Judge.

After we granted his application for interlocutory appeal, Deondrez Allen filed this appeal of the denial of his motion to suppress. He argues that the "be on the lookout" ("BOLO") broadcast which led to the stop of the car in which he was arrested was too vague to establish reasonable suspicion. We agree and therefore reverse the denial of his motion to suppress.

While the trial court's findings as to disputed facts on a motion to suppress will be reviewed to determine whether the ruling was clearly erroneous, where the evidence is uncontroverted and no question regarding the credibility of witnesses is presented, the trial court's application of the law to undisputed facts is subject to de novo appellate review.

*State v. Sanders*, 274 Ga. App. 393 (617 SE2d 633) (2005). The relevant facts from the testimony at the suppression hearing are undisputed, and the trial court entirely accepted that testimony. Corporal Daniel Anderson of the Fulton County Police Department, the officer who stopped the car in which Allen was a passenger and the only witness, testified that he

> was given a lookout from a previous case, and basically the BOLO was a silver or dark colored Dodge Charger, and in a certain area of Flat Shoals in unincorporated Fulton County. And while on patrol, [he] noticed the vehicle matching that description, and [he] followed it and attempted to pull it over, and it pulled into a parking lot for a business there, and [he] conducted [his] traffic stop there.

He explained that the BOLO was issued because, "[t]here were armed robberies in the area just off Flat Shoals Road. A subdivision in that area, and approximately three miles from the area that [he] pulled the vehicle over which is at Flat Shoals and Old National Road." The armed robberies "had been occurring for a couple of days up until the actual time that [he] actually pulled the vehicle over. The last time .. . it was earlier that day or just the day before. Earlier that morning or the evening of. . . ." In any event, the last armed robbery had occurred "more than three" hours before the stop. The stop occurred "at night. Probably . . . three in the morning . . . , something

2

like that." Anderson testified that the BOLO did not give the car's direction of travel or the number of occupants; the only description of the occupants was "black males."

The stop appears to have uncovered no information about the robberies, but Anderson smelled marijuana when he approached the car and later found marijuana inside. Allen, one of the occupants, was charged with possession of marijuana with intent to distribute.

Allen moved to suppress the marijuana. Following a hearing, the trial court denied the motion. The court found "nothing improper in the officer's investigatory stop of a car that matched the description in a BOLO for armed robbers under the totality of the circumstances in this case."

The proper question is whether the stop was justified by reasonable suspicion.

> Although an officer may conduct a brief investigative stop of a vehicle, such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct. . . . An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. . . . [C]ourts must consider all the facts and circumstances of a particular case in considering the legality of an investigative stop. In determining whether

3

a stop was justified by reasonable suspicion, the totality of the circumstances -- the whole picture -- must be taken into account.

*Darden v. State*, 293 Ga. App. 127, 130 (1) (a) (666 SE2d 559) (2008) (citations omitted).

In *Vansant v. State*, 264 Ga. 319 (443 SE2d 474) (1994), our Supreme Court held that a police officer must have sufficient particularized information to justify a traffic stop, or else the stop is "an unreasonable governmental intrusion." Id. at 321 (2). In *Vansant*, an officer stopped the defendant based solely on information that a white van had been involved in a hit-and-run in a restaurant parking lot approximately a mile away. The court noted that the officer

> did not have a particularized description of the vehicle; he did not know the direction in which the vehicle had left the scene of the purported hit-and-run; he had not observed criminal activity on the part of the person stopped; he had no knowledge or suspicion that the vehicle had been involved in other similar criminal behavior.

Id. The court held that under these circumstances, the stop was illegal and the trial court properly granted the defendant's motion to suppress. Id. Thus, *Vansant* stands for the proposition that insufficiently particularized descriptions of vehicles believed to be related to criminal activity do not justify a traffic stop.

4

We applied this principle in *State v. Dias*, 284 Ga. App. 10 (642 SE2d 925) (2007), in which an officer was told to look for "a maroonish or a brownish color either a Ford Taurus or a Tempo, or something like that, leaving the scene [of a shopping center burglary] with a white male occupant" who may have been wearing a baseball cap and who was traveling "east on Oakridge from Radium and Oakridge." Id. at 12 (2). We held that the description of the car was fatally general, observing that it contained "no year or body style, information about the condition, or number of doors"; and the description of the suspect was similarly defective, observing that it included no details other than skin color and gender. Id. at 13 (2).

> The effect of the description was that the officers should look for some sort of brown or maroon automobile manufactured by the Ford Motor Company driven by a white male who might be wearing a baseball cap. This description would cover a staggering number of vehicles in the State of Georgia.

Id.

The facts of this case are similar to those in *Vansant* and *Dias*. The only specific piece of information was the make and model of the car – a Dodge Charger. The other information was so general as to be essentially useless. The color was described as "silver or dark," a description that excludes very little. There was no

5

information about the approximate year of manufacture or the condition of the car. The only facts known about the occupants were their race and gender; not even the number of occupants was known. No particular street or direction of travel was communicated, and the vehicle was said to have been associated with a crime at least three hours old, much longer than the period of time between the BOLOs and stops in *Vansant* and *Dias*. And the vehicle carrying Allen was stopped approximately three miles from the crime scene, a greater distance from the crime scene than the stops in *Vansant* (one mile) and *Dias* (two miles). Under these circumstances, the BOLO was too generalized to justify the stop.

We have found BOLOs that conveyed similar information to be insufficient to support stops. In *Murray v. State*, 282 Ga. App. 741 (639 SE2d 631) (2006), we held that a BOLO for a gold Ford pickup truck on Selfridge Road with a male driver who had thrown a woman from the truck, was insufficient to support a stop several minutes later of a gold Ford truck heading away from the general direction of Selfridge Road. In *State v. Burns*, 238 Ga. App. 683 (520 SE2d 39) (1999), we held that a BOLO for an "'older, yellow in color Monte Carlo driven by or occupied by two suspects, one unknown and one . . . believed to be a white man,' that had been involved in a purse snatching three days earlier at a Lowe's store about two miles

6

away" was insufficient to justify the stop. See also *State v. Wolf*, 317 Ga. App. 706 (732 SE2d 782) (2012) (physical precedent) (stop of vehicle in an area in which many burglaries had occurred the day after a mail carrier had relayed his suspicions about the vehicle was unjustified; the only information conveyed was the race and gender of the occupants and the make and color of the vehicle).

The cases cited by the state are distinguishable. In *Thomason v. State*, 268 Ga. 298 (486 SE2d 861) (1997), the description of the car was much more specific than the description here. There, the BOLO was issued for "a brown 1978 or 1979 Oldsmobile Cutlass, described as being 'not as dark [brown] as the sheriff department's cars,' with a lighter brown top, being driven by a white male." Id. at 299 (2). "Shortly thereafter," the defendant's car was spotted "nearby." Id. Unlike the instant case, in *Thomason* the year of the car was described, the specific color of the car was described, a distinguishing feature – the lighter brown top – was described, the number of occupants was known, and the stop occurred shortly after the BOLO was issued.

In *Shorter v. State*, 239 Ga. App. 625, 626 (1) (521 SE2d 684) (1999), the officer who stopped the car "was looking for a blue Cadillac with four black men near the area where a tipster said he saw gunshots fired from such a car. A blue Cadillac

7

with four black men in it crossed the road directly in front of the police car, almost hitting it. The officer had to stop in the middle of the street to avoid a collision." Without specifying whether it was the description of the car or the careless driving that supported the stop, we held that "[t]hese facts support the conclusion that the officer had a reasonable, articulable suspicion for attempting to pull the Cadillac over." Id. In any event, unlike the instant case, in *Shorter*, the specific color of the car was known, the number of occupants was known, and the car was spotted near the area where the crime had occurred.

*Judgment reversed. Doyle, P. J., and Boggs, J., concur in the judgment only.*