**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**GOBEIL and LAND, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 3, 2023**

# In the Court of Appeals of Georgia

A22A1381. STATE v. GLANTON.

LAND, Judge.

William Glanton was indicted with crossing the guard line with drugs, possession of marijuana (less than an ounce) and driving with a suspended license after he was pulled over by a law enforcement officer responding to a "be on the lookout" (BOLO) call for a vehicle matching the car Glanton was driving. The trial court granted his motion to dismiss because the officer initiated a second-tier detention without the specific and articulable suspicion necessary to warrant such intrusion. For the following reasons, we affirm.

There are "three fundamental principles" which must be followed when conducting an appellate review of a motion to suppress. *Miller v. State*, 288 Ga. 286, 286 (702 SE2d 888) (2010).

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. . . . These same principles of law apply equally to trial court rulings that are in favor of the defendant[.]

(Citation and punctuation omitted.) Id. at 286 (1).

So viewed, the record shows that at 5:00 p.m. on February 15, 2018, an officer with the Paulding County Sheriff's Office was on patrol when dispatch sent out a BOLO from an anonymous caller. The BOLO described an aggressive driver in a small, gray passenger vehicle with "what appeared [to be an] orange out-of-state tag coming up on Mulberry Rock Road."

While traveling on Highway 101, the officer soon saw a dark gray passenger vehicle with a Florida tag drive past. The officer turned around to follow the vehicle to "observe any kinds of mannerisms that [were] stated through the [BOLO] call." The vehicle then made a right hand turn and pulled into a church parking lot. The officer testified that although he observed no traffic violations, he made the decision

2

to initiate his "emergency equipment, [his] lights, to conduct[] the stop and basically conduct a check of the vehicle, the driver, to make sure there was no issues going on." The officer stopped his squad car, with its emergency equipment on, at an angle to and behind Glanton's car. The officer testified that Glanton was not free to leave "[b]ecause his vehicle matched the description of the BOLO."

The officer testified that as he pulled in behind the vehicle, Glanton abruptly exited the driver's side of the car. The officer asked Glanton if he was okay. Glanton replied yes and that he had been driving the vehicle to check it since it was making noise. The officer prolonged the stop to question Glanton about the BOLO he received for an aggressive driver in a car matching the one Glanton was driving. Glanton responded that he had come from a different direction and that it was not him. When asked for his driver's license, Glanton provided his Georgia ID card and explained that he did not have a driver's license and that he was driving his girlfriend's car at her request to investigate a noise she heard the car making. The girlfriend was in the front passenger seat of the car and provided her Florida driver's license to the officer.

As he was interacting with Glanton and his girlfriend, the officer noticed the smell of marijuana coming from the vehicle. The officer asked if they had any

3

marijuana, and they said no. Because he was the only officer on the scene, he requested backup. Two additional officers arrived at the scene. The police searched the vehicle but found no marijuana in the car. The officer issued the girlfriend a warning for permitting Glanton to drive the car while knowing that he did not have a license but allowed her to drive the car away from the scene.

The officer then told Glanton that he would be arrested for driving without a license and advised him to disclose any contraband on his person because crossing the jail's guard lines with contraband would constitute a felony offense. Glanton denied that he had any contraband, and a subsequent search revealed none. Glanton was then transported to the Paulding County Detention Center where a booking officer found marijuana inside a pill bottle located in Glanton's pants.

Glanton filed a motion to suppress any information obtained during the traffic stop. After a hearing, the trial court granted the motion to suppress, and the State appeals.

The State argues that the trial court erred by granting the motion to suppress. Specifically, he argues that the BOLO call the officer was responding to did provide enough information to give the officer a reasonable suspicion to make the stop. We find no error.

4

An officer may "conduct a brief investigative stop of a vehicle only when such stop is justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct." *State v. Stilley*, 261 Ga. App. 868, 868 (584 SE2d 9) (2003). Accord *Terry v. Ohio*, 392 U. S. 1, 21 (88 SCt 1868, 20 LE2d 889) (1968). The investigatory stop

> must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination. Courts must consider all facts and circumstances of a particular case in considering the legality of an investigative stop. In determining whether a stop was justified by reasonable suspicion, the totality of the circumstances—the whole picture—must be taken into account.

(Citation and punctuation omitted). *Allen v. State*, 325 Ga. App. 156, 158 (751 SE2d 915) (2013).

Georgia law provides that a police officer must have particularized information to justify a police stop, or else the stop is an "unreasonable government intrusion." *Vansant v. State*, 264 Ga. 319, 321 (2) (443 SE2d 474) (1994). Thus, "insufficiently particularized descriptions of vehicles believed to be related to criminal activity do not justify a traffic stop." *Allen*, 325 Ga. App. at 158 (officer had insufficient

5

information to conduct a traffic stop when he received a BOLO for a "silver or dark colored Dodge Charger . . . in a certain area of Flat Shoals"). In *Vansant*, an officer acted on information that a white van had been involved in a hit-and-run accident a mile away. *Vansant*, 264 Ga. at 321 (2). The Court held that the officer did not have a reasonable particularized basis to pull over the vehicle when he had only a "generalized description of the suspect he was seeking and the [van] he was driving. . . and had no information to distinguish the van he stopped from all other white vans, such as its manufacturer, model or model year." Id. Thus, the stop was illegal, and the trial court had properly granted the motion to suppress. Id.

Here, the BOLO for an aggressive driver in a gray passenger vehicle traveling on Mulberry Rock Road with an orange out-of-state tag was, without more information, too generalized to warrant a traffic stop because "[t]his description would cover a staggering number of vehicles and drivers in the State of Georgia" and cannot create a reasonable suspicion to stop the vehicle. *State v. Dias*, 284 Ga. App. 10, 12 (2) (642 SE2d 925) (2007) (BOLO description relied upon by officer to justify traffic stop was insufficient when dispatcher reported a "maroonish or a brownish color either a Ford Taurus or a Tempo, or something like that, leaving the scene with a white male occupant" and failed to provide information about the "year or body

style, information about the condition, or number of doors provided). Accord *Murray v. State*, 282 Ga. App. 741 (639 SE2d 631) (2006) (a BOLO for a gold Ford pickup truck on Selfridge Road was insufficient to support a stop several minutes later of a gold truck heading away from Selfridge Road). Compare *Sims v. State,* 299 Ga. App. 871 (683 SE2d 911) (2009) (officer had reasonable suspicion to stop driver based upon BOLO for woman driving a truck with a specific license tag number); *Faulkner v. State*, 277 Ga. App. 702 (627 SE2d 423) (2006) (a BOLO provided an officer with reasonable suspicion of criminal activity sufficient to authorize his stop of a vehicle when it "provided particularized information describing the color, manufacturer and model of the vehicle, the number and race of its occupants, and its location and direction of travel"); *Thomason v. State*, 268 Ga. 298, 301 (2) (a) (486 SE2d 861) (1997) (officer had reasonable suspicion of criminal activity based upon description of a car when officer "knew the color of both the car and its top, the manufacturer, model, and model year of the car and the driver's gender and race").

The State has further failed to point to other factors that would support a finding that the officer had a reasonable suspicion that Glanton's vehicle was the subject of the BOLO. This Court has identified the following factors "to be

7

considered when assessing whether reasonable suspicion to conduct an investigatory detention" existed at the time of the stop:

> (1) the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) observed activity by the particular person stopped; and (6) knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

*Dias*, 284 Ga. App. at 13-14 (2), citing 4 LaFave, Search and Seizure, A Treatise on the Fourth Amendment (4th ed.), § 9.f (g). In considering these factors we find (1) that for the reasons stated above, the description of the vehicle was inadequate. (2) We have no idea of the size of the area in which the offender might be found because we only know that the officer stopped Glanton "soon" after he heard the BOLO, but have no information about the time elapsed between the crime and the stop. (3) No information was provided about the number of persons in the area. (4) The known of probable direction of the offender's flight was provided. (5) Glanton was not engaged in any activity which would have otherwise authorized a traffic stop. (6) The officer

8

had no knowledge that the person stopped had been involved in other criminality of the type presently under investigation. See *Dias,* 284 Ga. App. at 13-14 (2).

Based on the above, we find that the trial court did not err by granting the motion to suppress because it could reasonably conclude that no reasonable suspicion existed to warrant the officer's stop and investigatory detention of Glanton.

*Judgment affirmed. McFadden, P. J., and Gobeil, J., concur.*