**SECOND DIVISION**
**MARKLE,**
**LAND and DAVIS, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

**February 25, 2025**

# In the Court of Appeals of Georgia

A24A1428. TOWE v. THE STATE.

LAND, Judge.

Rodney Towe appeals from the trial court's denial of his motion to suppress the results of an investigatory traffic stop. He argues that the officers lacked reasonable suspicion necessary to make the investigatory stop of his vehicle because the officers lacked a particularized description of the vehicle or the driver that they suspected was engaged in criminal activity. We granted Towe's application for interlocutory review of that order. For the following reasons, we affirm.

There are "three fundamental principles" which must be followed when conducting an appellate review of a motion to suppress. *Miller v. State*, 288 Ga. 286, 286 (1) (702 SE2d 888) (2010).

First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support it. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment.

(Citation and punctuation omitted.) Id. at 286-287 (1).

So viewed, the record shows that in October 2022, Officer Misty Pledger worked in a Floyd County Police Department task force that investigated internet crimes against children. On October 27, 2022, Pledger posed as a 14-year old girl online and began exchanging messages on Facebook Messenger with Towe, a 43-year old man.

At the suppression hearing, Towe introduced a transcript of Facebook messages between Towe and Pledger. The two continued to message each other over a period of several days and the conversation turned sexual. During that time, Towe repeatedly asked Pledger for photos of herself in her bikini or her nightclothes.

On October 31, 2023, Towe sent a message to Pledger and suggested that they meet in person to engage in sex acts. Pledger sent Towe a message asking him to meet her at Lindale Park sometime after 11:00 p.m. that evening. Around 11:00 p.m., Pledger sent Towe a picture of herself in the park to confirm that she was there. When Pledger asked if Towe was coming to meet her at the park, he sent a thumbs up.

Towe sent a message to Pledger telling her that he would arrive in a black car. Pledger responded that she was near the picnic tables, that she was cold, and asked Towe how long he would be. Towe replied that it would take him 15 minutes to arrive. At some point after that, Towe sent a message to Pledger telling her to "[g]o home for a little bit[.]" Not all of the messages have time stamps, but it appears that the conversation lapsed for another unspecified period of time.

At 12:21 a.m., Towe sent a message asking, "You there?" Pledger responded, "I can walk over," and Towe answered with a thumbs up. During this exchange of messages, Pledger was parked at a gas station with a clear view of the park. Lindale Park is bordered by Maple Avenue and three other public residential streets. Just after Towe sent his final message, Pledger saw a white pickup truck circle the park three times by driving on the public roads that bordered the park. Pledger asked Towe,

"Where u at[?] R u in a truck [?]" Towe did not respond, and Pledger directed nearby patrol officers to stop the truck.

Pledger testified that, after Towe sent his message at 12:21 a.m. asking where she was, the white truck was the only vehicle driving near the park. Although she did not know exactly which direction Towe would be coming from or his arrival time, she "assum[ed]" that the white truck was Towe because his final message asking if she was at the park coincided with the white truck circling the perimeter of the park. Officers stopped the white truck around 12:42 a. m. The driver's license and registration matched Towe's Facebook profile. Towe was then arrested.

At the suppression hearing, Pledger testified that although Towe had told her that he would be driving a black car, it was "very common" for individuals to approach a meet-up in a car that is "completely different" from the one they described.

Towe was charged with computer pornography, obscene internet contact with a child, and criminal attempt to commit a felony. Towe filed a motion to suppress, arguing that the officers lacked reasonable, articulable justification to initiate the stop. The trial court denied the motion and this appeal followed.

1. For the first time, the State argues that the trial court should have sua sponte dismissed Towe's motion to suppress on timeliness grounds. See OCGA § 17-7-110 (requiring that "[a]ll pretrial motions, including demurrers and special pleads, shall be filed within ten days after the date of arraignment, unless the time for filing is extended by the court"). However, the State cannot raise its timeliness objection for the first time before this Court. See *State v. Jennings*, 362 Ga. App. 790, 795 (b) (869 SE2d 183) (2022) (Because "this Court is one for the correction of legal errors, we have no jurisdiction to address issues raised for the first time on appeal") (footnote omitted).

2. Towe argues that the officers lacked a particularized basis to conduct an investigatory stop of his vehicle under the facts presented at the motion to suppress. Towe argues that his white truck was not a match to the "black car" described in the message. He further notes that the truck was traveling on public roads which encircled the park and contends that Pledger had no objective reason to believe that the truck's driver was doing anything other than looking for one of the nearby homes. Further, Towe points out that Pledger only had a vague timeframe for her suspect's arrival.

The Supreme Court of the United States has construed the Fourth Amendment[1] of the United States Constitution as setting forth three tiers of police-citizen encounters: "(1) communication between police and citizens involving no coercion or detention, (2) brief seizures that must be supported by reasonable suspicion, and (3) full scale arrests that must be supported by probable cause." (Punctuation and footnote omitted.) *Miller v. State*, 351 Ga. App. 757, 761 (1) (833 SE2d 142) (2019).

A investigatory traffic stop is a second-tier encounter. *Lumpkin v. State*, 310 Ga. 139, 151-152 (3) (849 SE2d 175) (2020). During a second-tier encounter, even in the absence of probable cause, a police officer "may stop persons and detain them briefly, when the officer has a particularized and objective basis for suspecting the persons are involved in criminal activity." (Citation and punctuation omitted.) *Lewis v. State*, 307 Ga. App. 593, 595 (705 SE2d 693) (2011).

---

[1] See U.S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated...."). Ga. Const. Art. I, Sec. I, Par. XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue except upon probable cause supported by oath or affirmation particularly describing the place or places to be searched and the persons or things to be seized").

Thus, the question here is whether the officer's traffic stop of Towe's vehicle was justified by reasonable suspicion. "An investigatory stop must be justified by some objective manifestation that the person stopped is, or is about to be engaged in criminal activity. This suspicion need not meet the standard of probable cause, but must be more than mere caprice or a hunch or an inclination." (Citation and punctuation omitted.) *Allen v. State*, 325 Ga. App. 156, 158 (751 SE2d 915) (2013). See also *Baggett v. State*, 367 Ga. App. 851, 856 (1) (a) (888 SE2d 636) (2023) (to conduct an investigatory traffic stop, an officer must have "more than a subjective, unparticularized suspicion or hunch") (punctuation and footnote omitted). This reasonable suspicion analysis requires an examination of the totality of the circumstances.

> This totality of the circumstances test consists of two elements: (1) The determination must be based upon all the circumstances gathered from objective observations, information from police reports, if such are available, and consideration of the modes and patterns of operation of certain kinds of lawbreakers. The trained police officer makes a determination from these data — this determination can be based upon inferences and deductions that might well elude an untrained person. In reaching such deductions, police officers are authorized to make common sense conclusions about human behavior. Additionally, the

7

> evidence must be viewed from the perspective of what action a reasonable police officer would take. (2) The second element which must be present before a stop is permissible requires that during the process of analyzing the facts as described in the first element, a suspicion must arise that the particular individual being stopped is engaged in wrongdoing.

(Citations and punctuation omitted.) *State v. Causey*, 246 Ga. App. 829, 832-833 (1) (b) (540 SE2d 696) (2000).

Towe correctly argues that there must be a "particularized description of the vehicle" that officers believe is "related to criminal activity" before they have reasonable suspicion to conduct an investigative stop based solely upon the description of the vehicle. *Allen*, 325 Ga. App. at 158. See also *State v. Glanton*, 366 Ga. App. 633, 636 (883 SE2d 852) (2023) (a BOLO call for an aggressive driver in a gray passenger vehicle traveling on Mulberry Rock Road with an orange out-of-state tag was, without more information, too generalized to warrant a traffic stop because this description would "cover a staggering number of vehicles and drivers in the State of Georgia).

However, this is not a case where the only fact known to the officer making the traffic stop was a vague description of a vehicle. Rather, this case is similar to *Baggett*

*v. State*, 367 Ga. App. 851 (888 SE2d 636) (2023). In *Baggett*, an undercover officer posing as an underage girl began messaging with the defendant on a website known for its use in soliciting prostitutes. Id. at 852. The defendant and the officer engaged in a series of texts culminating in a plan that they would meet in order to engage in sex acts. Id. The two made a plan to meet at Midway Park at 9:30 a.m. near the tennis courts, and the defendant told the officer that he would be driving a Honda Pilot. Id. at 852-853. At the scheduled meeting time, the officer texted the defendant to ask where he was but received no response. Id. at 853. Then, the officer observed a red pickup truck enter the park. Id. But rather than head towards the tennis courts, the truck turned town a road that led to a public trash dump, made a quick u-turn and headed back towards the park's exit. Id. Officers followed the truck and conducted an investigatory stop 15 minutes later. This Court held that, based upon the facts presented, the officers had a reasonable, articulable suspicion that the driver of the pickup truck was the person who wanted to meet for sex with an underage girl. Id. at 857 (1) (a). Thus, the defendant could not prevail upon his claim that his trial counsel rendered ineffective assistance by failing to file a motion to suppress the results of the investigatory stop. Id. at 857 (1) (a).

Similarly to *Baggett*, supra, the totality of the circumstances in this case and the rational inferences that can be drawn therefrom show that Pledger had reasonable, articulable suspicion that the driver of the white truck was the person who was hoping to find her in the park. See *Lumpkin*, 310 Ga. App. at 152 (3) (the officer's action must be "justified by specific and articulable facts which, when taken together with rational inferences from those facts, reasonably warrant that intrusion") (citation and punctuation omitted). Pledger testified that she instructed the officers to stop the white truck because— at the same time Towe sent his final message asking if Pledger was at the park— she observed the white truck circle the perimeter of Lindale Park three times. Further, Pledger testified that the white truck was the only vehicle to drive near the park after Towe sent his message at 12:21 a.m. asking where she was. Pledger also explained that was "very common" for individuals to approach a meet-up in a car that is "completely different" than the one they described. See *Baggett*, 367 Ga. App. at 853 (1) (a) (defendant told undercover officer that he would be driving a white car, but arrived in a red truck instead). Although Towe argues that it is possible that a truck circling the park multiple times could have been merely searching for a particular residence, "a determination that reasonable suspicion exists need not rule

out the possibility of innocent conduct." (Punctuation and footnote omitted.) *State v. Walker*, 350 Ga. App. 168, 176 (2) (a) (828 SE2d 402) (2019).

For the above reasons, we affirm the trial court's denial of Towe's motion to suppress the results of the investigatory traffic stop.

*Judgment affirmed. Markle, J. and Davis, J., concur.*