## A04A0228. BLAZER v. THE STATE.
(598 SE2d 338)

MILLER, Judge.

Without warning, Harry Blazer grabbed and struck a patron of his store when that patron attempted to leave the store through the back door. Charged with battery and simple battery, Blazer moved the court to determine that OCGA § 16-3-24.2 immunized him from prosecution. The court denied the motion, and Blazer appeals (using the interlocutory appeal procedure). We hold that evidence supported the court's ruling and affirm.

Contrary to Blazer's position in his brief and at oral argument, the evidence in the record before us clearly reveals that the facts of the incident are hotly disputed. This cannot be overemphasized, as Blazer's entire argument hinges on his version of the facts, which version differs substantially from the patron's testimony. Inasmuch as the trial court ruled against Blazer, we of course must infer that the trial court found the patron's testimony more credible than Blazer's, and accordingly we must affirm since some evidence supports the trial court's ruling. See *Franchell v. Clark*, 241 Ga. App. 128, 131 (3) (524 SE2d 512) (1999).

The patron testified that he had purchased his lunch from Blazer's store and had gone to the back of the store to give his mother (a store employee) a badge. His mother was standing next to Blazer and some women near the back door, and the patron greeted them. The patron then tried to go around the group to exit through the back door.

Blazer looked angrily at the patron and demanded, "[W]here do you think you're going? Where are you taking the food? Do you have [a] receipt[?]" The patron responded that he did have a receipt and showed the receipt to Blazer. As the patron continued toward the door, Blazer suddenly and without provocation attacked him by grabbing and throwing him. Blazer admitted to striking the patron during the incident. Since the only statements Blazer made to the patron prior to the attack went to the question of a receipt, the patron

understood that Blazer was attacking him because Blazer believed the patron was stealing the food and was trying to escape through the back door.

Blazer's version of the incident is different in numerous respects. Blazer testified that he saw the patron holding a store bag and talking to two female employees in the bakery area of the store, which is a restricted area. He approached the group and asked the patron if he had a receipt for the goods in the bag, and the patron showed him a receipt. Blazer then asked the patron to leave the bakery area of the store, as such was restricted to employees only. He directed the patron to the public entrance at the front of the store.

According to Blazer, the patron said that he was in a hurry and that he intended to exit through the back emergency door that was about ten to twelve feet away. Blazer told the patron that he was not allowed to use that door and that he needed to leave by the front entrance. (Blazer testified that only bakery employees were allowed to use the back door.) The patron responded that he was late for work and needed to use the back door. Blazer again informed him that such was not permitted, but the patron stated he was going to use the door anyway. Blazer twice more told the patron not to use the door, but the patron indicated he intended to do so. Blazer approached the patron to escort him out the front entrance, and the patron pushed Blazer on the chest. Blazer hit the patron, turned him around, grabbed his belt, and escorted him away. The confrontation lasted about three to four minutes.

The differences between the two versions are critical. The patron testified that the only statements Blazer made prior to the attack focused on the receipt for the merchandise, which receipt the patron showed to Blazer. Blazer on the other hand claims that after being shown the receipt, he repeatedly informed the patron that the bakery area was restricted, that the patron needed to leave the bakery area, and that the patron's egress through the back door was not permitted but could only be accomplished through the front entrance.

Blazer was charged with simple battery and battery for his actions against the patron. In a pre-trial motion, he moved the court to find him immune from criminal prosecution under OCGA § 16-3-24.2. In support of his motion, he submitted portions of the patron's and Blazer's depositions taken in a civil lawsuit. The court held a hearing on the motion, and the parties agreed to have the motion decided based on the written deposition testimony. The court denied the motion, and Blazer appeals.

1. Since the facts are disputed, the standard of review is not de novo. Compare *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994) (de novo appellate review applies to undisputed facts). Significantly, at the behest of the parties, the trial court did not receive

live testimony on this critical motion. Normally, where the facts are in dispute and thus credibility determinations are crucial, live testimony at an evidentiary hearing would appear critical to allow the court to observe each witness's demeanor, voice inflection, eye contact, and other credibility-related circumstances. Nevertheless, the parties chose here to rely exclusively on portions of written deposition testimony from the patron and from Blazer. Cf. *Boggs v. State*, 261 Ga. App. 104, 105 (581 SE2d 722) (2003) (counsel agreed that trial judge would decide OCGA § 16-3-24.2 pre-trial motion based on written evidence).

When the only evidence on a pre-trial motion before the trial court is written testimony that is conflicting, it becomes a question of fact to be resolved by the trial judge. See *Franchell*, supra, 241 Ga. App. at 131 (3). The trial judge's resulting factfindings will not be disturbed on appellate review when supported by any evidence. See id. Thus, even though the parties agreed that the court could determine the motion based on the written deposition testimony, which conflicting testimony is in the record before us, we do not review that evidence de novo but are required to defer to the trial court's resolution of the fact issues in conflict.

2. OCGA § 16-3-24.2 immunizes from criminal prosecution "[a] person who uses threats or force in accordance with Code Section 16-3-23 or 16-3-24. . . ." Contrary to the State's claims at oral argument, Blazer does not rely upon OCGA § 16-3-24 but instead relies upon OCGA § 16-3-23, which provides that "[a] person is justified in threatening or using force against another when and to the extent that he or she reasonably believes that such threat or force is necessary to prevent or terminate such other's unlawful entry into or attack upon a habitation. . . ." See *Wike v. State*, 262 Ga. App. 444, 445 (585 SE2d 742) (2003); *Goerndt v. State*, 144 Ga. App. 93 (2) (240 SE2d 711) (1977). The term "habitation" includes a place of business. OCGA § 16-3-24.1.

Having ruled against Blazer's immunity motion, the trial court (based on the evidence before it) implicitly resolved the issues of fact against Blazer and apparently found that Blazer did not reasonably believe that the force he used was necessary to terminate the patron's entry into the restricted bakery area. The patron's version of the incident supported this finding in that the patron testified that Blazer — without provocation, without warning that the bakery area was restricted, and without declaring the back door as off-limits — grabbed and struck the patron for no apparent reason other than perhaps believing that the patron was shoplifting the food (even though Blazer admitted the patron had showed him a receipt for the food).

This Court is not authorized to determine whether Blazer's or the patron's testimony is more credible; that was a decision for the trier of fact. Since some evidence supported the trial court's ruling against Blazer, we must affirm the trial court's ruling.

*Judgment affirmed. Andrews, P. J., and Ellington, J., concur.*

DECIDED MARCH 17, 2004 —
RECONSIDERATION DENIED APRIL 2, 2004 —

*Alston & Bird, John L. Latham, Steven H. Sadow*, for appellant.
*Carmen D. Smith, Solicitor-General, Richard N. Elliott, Jody L. Peskin, Assistant Solicitors-General*, for appellee.