# IN THE COURT OF APPEALS OF IOWA

No. 19-0948
Filed July 22, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**MARK BESAW,**
        Defendant-Appellant.
_____

        Appeal from the Iowa District Court for Woodbury County, John C. Nelson,

District Associate Judge.


        Mark Besaw appeals from a denial of his suppression motion challenging

the constitutionality of the stop of his vehicle. **AFFIRMED**.


        Robert Tiefenthaler, Sioux City, for appellant.

        Thomas J. Miller, Attorney General, and Israel Kodiaga, Assistant Attorney

General, for appellee.


        Considered by Vaitheswaran, P.J., and Mullins and Ahlers, JJ.

**AHLERS, Judge.**

Shortly after 1:00 a.m. on Thursday, May 31, 2018, a pickup traveling in the wrong direction on a one-way street in downtown Sioux City ran a red light and broadsided a taxicab. The driver of the pickup did not stop and fled the scene of the collision, continuing to head westbound in the wrong direction on the one-way street. The taxicab was damaged in the collision. After a 911 call was made reporting the collision and describing the fleeing pickup, Sioux City police officers began searching for it.[1] Their search was aided by the light amount of traffic on the streets due to the early morning hours on a workday.

A little over thirty minutes after the collision, an officer encountered a pickup matching the description of the pickup that caused the collision. The officer turned around and followed the pickup, which appeared to be driven in such a manner as to avoid contact with the officer. The officer eventually found the vehicle parked at the end of a long private driveway a considerable distance from a residence with the engine running, no lights on, and the driver still in it. The officer activated the patrol vehicle's lights to initiate a stop in order to investigate. That investigation revealed that the driver was Mark Besaw and he was the driver of the pickup involved in the collision. Further investigation resulted in Besaw being arrested for and charged with operating while intoxicated (OWI) in violation of Iowa Code section 321J.2 (2019).

---

[1] Officer testimony and a recording of officer radio traffic described the pickup as "a full-sized truck with South Dakota plates." It was reported to be traveling westbound. It was also reported the taxicab driver "thinks it was a Chevy" and it "was like a tan, four-door."

Besaw sought to suppress all evidence after the officer initiated the stop by activating the lights of the patrol car, claiming the officer did not have reasonable suspicion of criminal activity so as to justify a seizure. The district court denied Besaw's suppression motion. The parties stipulated to a trial on the minutes, and Besaw was found guilty and sentenced. He appeals, seeking to overturn the conviction on the basis the suppression motion should have been granted.

## I.      Issues Presented.

Besaw raises three issues: (1) the officer lacked reasonable suspicion for a stop because the description of the vehicle was too generalized; (2) any reasonable suspicion the officer may have had dissipated before the stop was initiated; and (3) a stop is not allowed based on reasonable suspicion of a completed misdemeanor.

## II.      Standard of Review.

Due to Besaw raising a constitutional challenge to the seizure of his person and vehicle, the following standard of review applies:

> When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo. We examine the whole record and make an independent evaluation of the totality of the circumstances. Each case must be evaluated in light of its unique circumstances.

*State v. Fogg*, 936 N.W.2d 664, 667 (Iowa 2019) (quoting *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018)).

## III.      Error Preservation.

Before proceeding to the merits, we must first address an issue of error preservation raised by the parties. The State asserts Besaw failed to preserve

error on his third argument, that a completed misdemeanor cannot serve as a basis for an investigatory stop, because he did not raise this issue before the district court. Besaw counters that he raised the issue of the constitutionality of the stop and the completed misdemeanor component is just an argument on the preserved issue.

"Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997). "Our error preservation rule serves the salutary purpose of giving notice to the court and opposing counsel." *Id.* at 608. A mere assertion of unconstitutionality "does not encompass every conceivable constitutional violation." *State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002); *see also State v. Manna*, 534 N.W.2d 642, 644 (Iowa 1995) (finding an argument raised in a motion to suppress but not ruled upon by the district court is not preserved on appeal).

Besaw's written motion to suppress challenged the constitutionality of the stop on the grounds of reasonable suspicion only, and the transcript of the suppression hearing shows the focus was entirely on reasonable suspicion. Not surprisingly, the court's suppression order denied Besaw's motion solely on the grounds of reasonable suspicion. While Besaw raised the constitutionality of the stop in his suppression motion, he did not raise, and the court did not rule on, the question of whether the stop was unconstitutionally premised on a completed misdemeanor. For that reason, we find the completed-misdemeanor question is not preserved on appeal, and we do not address it.

**IV.    Discussion.**

An officer is permitted to "briefly stop an individual or vehicle for investigatory purposes when the officer has a reasonable, articulable suspicion that a criminal act has occurred, is occurring, or is about to occur." *State v. Vance*, 790 N.W.2d 775, 780 (Iowa 2010). The purpose of such a stop is "to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002). "Whether reasonable suspicion exists for an investigatory stop must be determined in light of the totality of the circumstances confronting a police officer, including all information available to the officer at the time the decision to stop is made." *Id.* at 642. "The evidence justifying the stop need not rise to the level of probable cause." *Id.* "An officer may make an investigatory stop with 'considerably less than proof of wrongdoing by a preponderance of the evidence.'" *Id.* (quoting *State v. Richardson*, 501 N.W.2d 495, 496–97 (Iowa 1993)).

Besaw asserts the officer did not have reasonable suspicion to stop his vehicle because the description of the vehicle available to the officer was too generalized. We disagree. As previously noted, one of the officers testified "[t]here was light traffic" on the streets due to the time of day, so officers would be less likely to meet multiple vehicles matching the description of the fleeing pickup. Officers were looking for a four-door, full-size Chevy pickup with South Dakota license plates and a "like a tan" color that left the collision site heading west. Relatively shortly after the call went out to be on the lookout for the pickup, the

arresting officer encountered a tan,[2] four-door Chevy pickup on the west side of Sioux City that appeared to have some damage to the pickup bed. In addition, before the stop was initiated, the officer confirmed the pickup had South Dakota license plates.

The details known to the officer in this case distinguish the out-of-state cases cited by Besaw, namely *State v. Easterberg*, No. 115,791, 2017 WL 66338 (Kansas Ct. App. Jan. 6, 2017), and *Vansant v. State*, 443 S.E.2d 474 (Ga. 1994).

*Easterberg*, like this case, involved an early-morning-hours stop. 2017 WL 66338, at *1. However, unlike this case, the description of the vehicle was limited to a white pickup with two male occupants that "possibly had been involved" in a collision. *Id.* Officers stopped the vehicle two hours after receiving that description. *Id.* The Kansas Court of Appeals found those details insufficient to justify a stop, holding "[h]ours removed from the report, a vehicle type and color alone are too remote or stale to furnish reasonable suspicion for a traffic stop." *Id.* at *2. Here, the stop occurred a little over thirty minutes following the reported collision, not two hours later. While thirty minutes is not the height of freshness, it is sufficiently fresh to distinguish *Easterberg* and support a stop in this case. Additionally, unlike *Easterberg*'s possibility of the vehicle being involved in a

---

[2] The record reveals that the pickup was actually silver in color. However, the officer testified the pickup appeared to be tan in color when viewed under street lights as the officer and Besaw passed each other. It was only upon close inspection of the pickup as the officer approached it to make the stop that it was discovered the vehicle was actually silver in color. Given this plausible explanation of the color discrepancy, on our de novo review, we find the color discrepancy to be an inconsequential issue. The officer saw what looked like a tan vehicle, just as the taxicab driver saw a "like a tan" vehicle. The fact the vehicle turned out technically to be silver upon closer inspection did not negate the reasonableness of the officer's suspicion.

collision, here there was no question the vehicle being sought had been involved in a collision and the pickup observed by the officer appeared to have recent damage. Finally, the additional detail of the pickup being a full-size, four-door pickup with out-of-state plates[3] provided additional details justifying a stop.

Vansant also involved a more limited description of a vehicle, consisting only of a white van involved in a hit-and-run accident in a restaurant parking lot approximately a mile away. Vansant, 443 S.E.2d at 321. With three dissenters, the Georgia Supreme Court found a lack of the necessary particularized basis for stopping the van. Id. We find the additional descriptors available to the officer in this case (i.e., make, number of doors, apparently fresh damage, and out-of-state plates) distinguishes this case from Vansant.

In addition to the extra vehicle descriptors distinguishing this case from Easterberg and Vansant, the totality of the circumstances include additional details that justified the stop. As the officer turned around to follow Besaw's pickup to investigate, the pickup immediately turned off the street on which the vehicles had been traveling, making it more difficult for the officer to follow. The officer eventually found the pickup on a dead-end street in a residential area. It was parked in the long driveway of a residence. Rather than being pulled up to the house, the pickup had been parked at the bottom of the driveway, just off the street

---

[3] Besaw asserts the accident occurred "on a road that crosses over into South Dakota" and "it would not be unusual to see a vehicle with South Dakota plates" at the location of the accident or the stop in western Sioux City. This information is not in the record. However, even assuming this assertion is correct, the additional detail of the license plates, although not overwhelming, provided some extra support for the reasonable suspicion finding when considering the totality of the circumstances.

and a considerable distance from the house, with the lights off while the driver remained in the vehicle with the engine running.

The officer found these actions suspicious. We agree. Besaw's actions in turning off the street immediately after a police officer started following him and parking in this manner at a residence were consistent with someone who was trying to avoid contact with the officer. Likewise his manner of parking in the driveway was consistent with someone who wanted to get off the street to avoid police while, at the same time, trying to avoid drawing the attention of the occupants of the house where his presence was not wanted.

It is true that Besaw's actions were also consistent with someone who was engaged in perfectly legal activity. It was possible Besaw's pickup was not the pickup in question, and we can imagine a myriad of innocent possibilities for why a driver might turn where the driver did and why a driver might park at the end of a long driveway with the vehicle's lights off and the motor running in the early morning hours of a weekday. However, these possibilities do not negate reasonable suspicion. Investigatory stops do not require officers to rule out the possibility of innocent behavior before the stop is conducted. *Kreps*, 650 N.W.2d at 643. As stated in *Kreps*:

> [S]uspicious conduct by its very nature is ambiguous, and the principle function of the investigative stop is to quickly resolve that ambiguity. Therefore, if any reasonable inference of wrongful conduct can be objectively discerned, notwithstanding the existence of other innocent inferences that could be drawn, the officers have the right to temporarily detain the individual for the purpose of inquiry.

*Id.* (quoting *State v. Anderson*, 454 N.W.2d 763, 765 (Wis. 1990)). Here, with the pickup matching the description of the vehicle causing the collision and the pickup

driver's suspicious behavior when the officer began to follow it, the officer had reasonable, articulable suspicion to initiate a stop.

We also reject Besaw's claim that, even if there was originally reason to suspect his was the suspect vehicle, the additional information the officer obtained about where on the pickup damage was incurred negated any reasonable suspicion the officer may have otherwise had. When the officer first observed the pickup, he noticed what appeared to be fresh damage to the pickup bed.[4] Before initiating the stop, the officer received information that the damage was expected to be on the front, but such damage was "probably pretty minor." This information did not negate the officer's suspicion. This was an investigation in progress, so the fact that there may have been "pretty minor" front end damage did not preclude the possibility other parts of the pickup sustained damage in the collision, thus possibly explaining the damage to the pickup bed observed by the officer. Likewise, being informed there was "probably pretty minor" damage to the front was not inconsistent with anything the officer observed. Although he did not notice front-end damage when the vehicles passed each other before the officer turned around to follow, minimal damage would most likely not be immediately apparent. Once the officer found the parked pickup and received the information about the possibility of front-end damage, the officer was no longer in a position to see the front of the vehicle. Based on the other information available to him, he had

---

[4] At the hearing, the arresting officer described the damage as a "dent or crease to the side of the box and also a bit of scuff . . . on the rear bumper that had dirt removed from the rear bumper." Besaw later told the arresting officer the damage to the rear of the pickup "was rather old."

reasonable grounds to conduct a stop and look for front-end damage as part of his investigation trying to resolve the ambiguity.

## V.    Conclusion.

The officer had sufficient description of the fleeing pickup to create reasonable suspicion that Besaw's pickup was the suspect vehicle, and additional information about damage to the pickup did not negate reasonable suspicion. The question of whether the stop was unconstitutionally premised on a completed misdemeanor is not preserved on appeal, and we do not consider it. Therefore, we affirm the district court's denial of Besaw's motion to suppress.

**AFFIRMED**.